THE STATE v. STEIN, *Appellant*

1. **Impeachment of Witnesses.** Where impeaching evidence consists of a letter which the witness admits having written, it may be offered in evidence without examining him as to its contents.

2. **Competency of Juror, who has formed an Opinion.** The rule laid down in *State v. Walton*, 74 Mo. 270, re-affirmed.

3. **Precedents.** In framing instructions on well settled points, it is best to adhere to precedents long and well established; it is always hazardous to travel out of the beaten path.

*Appeal from Jackson Criminal Court.*—HON. H. P. WHITE, Judge.

REVERSED.

*L. C. Slavens* and *John W. Wofford* for appellant.

*D. H. McIntyre*, Attorney General, for the State.

NORTON, J.—At the May term, 1883, of the criminal court of Jackson county, defendant was indicted for murder in the first degree for killing one George Fredericks, in Kansas City, on the 9th day of June, 1883. He was arraigned on this indictment on the 16th day of June, 1883, and entered his plea of not guilty, and by agreement of parties, the court set the cause down for trial on the 16th day of July, 1883, at which time, after defendant's motions for a continuance and change of venue had been overruled, the trial was proceeded with, which resulted in the conviction of defendant for murder in the second degree, and the assessment of his punishment at twenty-five years' imprisonment in the penitentiary. From this judgment defendant has prosecuted his appeal to this court, and assigns among other grounds of error the following, viz: that the court erred in overruling defendant's application for a continuance, also in overruling his challenge to certain jurors; also in giving improper and refusing proper instructions, also in admitting improper and rejecting proper evidence.

The State v. Stein.

The last of the above assigned grounds of error will be considered first. While the record shows numerous exceptions to the action of the court in receiving and rejecting evidence, we shall confine ourselves to the investigation of those exceptions only, upon which counsel in their argument mainly relied, and the chief one of these is as to the action of the court in refusing to allow defendant to read in evidence a certain letter of witness Foster.

During the trial the State introduced one J. C. Foster as a witness, who, after stating that on the day the deceased was shot, and after the shooting, about midnight of the day it was done, he had a conversation with defendant, was asked the following question: " In that conversation did you say to him 'I should have thought George would have heard the click of the hammer of the revolver, when you cocked it, and that he said no—that is, he, Stein—no, I cocked it when I pulled it out of my pocket, and that he, Stein, was two steps higher up the steps than Fredericks.'" The answer of witness to this question was: "Yes, sir, he stated so." It appears from cross-examination of this witness, that his business was that of a detective, and that the question also propounded was read from a paper which the witness had written down and voluntarily handed to the prosecuting attorney. It further appears that during the cross-examination a letter was handed to the witness, and he was asked if it was in his handwriting, and whether he wrote it, to which he replied that it was written by him. The examination of the witness was closed, and he was dismissed, and thereupon defendant offered to read the letter which the witness admitted he wrote and which reads as follows:

1. IMPEACHMENT OF WITNESSES.

St. James Hotel, Kansas City, Mo., 7, 15, 1883.
" Orth H. Stein:

*Dear Sir:* I have had a talk with your uncle Dykeman, but he says nothing about my trying to aid you. I told your uncle that I could furnish positive proof in your

favor, that would do you more good than a ten-hour speech of Major Warner, for one-third of the money he (Warner) was to get, or that he charged for his talk, to-wit, $1,500. Now, if anything is done with me, you must have some one. speak at once, as I may be employed in some other direction.                    Respectfully,

J. C. Foster."

This evidence was objected to on the ground that it was incompetent because it did not relate to the facts of the case. It seems from the record that the court sustained the objection on the ground that the witness ought first to have been examined as to its contents. We are of the opinion that the ruling of the court was erroneous, and that the evidence offered should have been allowed to go to the jury, as tending to show that the witness was biased or corrupt and willing to serve either the defendant or State in furnishing evidence, for a price to be paid either by one or the other party, and it mattered not which.

In a case where the evidence of the witness is sought to be impeached by showing that he has made statements contrary to what he has testified to on the trial, it is generally held necessary in the case of verbal statements, before this can be done, to ask him as to where, when and to whom the contradictory statements were made. We have no doubt that if witness had verbally stated to defendant what he wrote in the said letter, that it would have been competent for defendant to have asked him if he had not stated to defendant at a certain time and place that for $500 he would furnish positive evidence in his favor, and that if not engaged at once he would seek employment in another direction, and upon his denial of the fact, to have introduced evidence proving the statement. 1 Greenleaf Ev., § 462; *Geary v. People*, 22 Mich. 220; *Hamilton v. People*, 29 Mich. 173. When, however, the impeaching evidence is a writing made by the witness sought to be impeached, as a foundation for its introduction, the writing must first

be shown to him, and if he admits that he wrote it, the writing must then speak for itself. The principle governing in such a case is thus stated by Mr. Greenleaf: "And if he admits the letter to be his writing he cannot be asked whether statements such as the counsel may suggest, are contained in it, but the whole letter itself must be read, as the only competent evidence of that fact. According to the ordinary rule of proceeding in such cases, the letter is to be read as the evidence of the cross-examining counsel, in his turn when he shall have offered his case. But if he suggest to the court that he wishes to have the letter read immediately, in order to found certain questions upon its contents after they shall have been made known to the court, which otherwise could not well or effectively be done, that becomes an excepted case; and for the convenient administration of justice, the letter is permitted to be read, as part of the evidence of counsel so proposing it, subject to all the consequences of its being so considered." 1 Greenleaf Ev., § 463. The same rule is laid down in Roscoe Cr. Ev., (5 Ed.) p. 183, and is also announced as the rule by this court in the case of *Prewitt v. Martin*, 59 Mo. 325.

The evidence of Foster, though original in its character, was introduced by way of rebuttal, and, as appears from the record, the question which drew out what was said in the conversation had by him with defendant, was written out by Foster, the witness, and voluntarily handed to the prosecution. It was of the most damaging character to the defendant, being in important respects corroborative of the evidence of the woman who seems to have been the cause of the trouble between defendant and deceased which culminated in the shooting of deceased, and tending to establish the fact that the shooting was premeditated, and deliberately done.

We are of the opinion that the letter which the witness, after having had full opportunity to examine, admitted to have been written by him, containing an offer that for $500, he would furnish positive proof in his favor that

would do him more good than a ten-hour speech from a distinguished lawyer, accompanied by an intimation couched in the language of a threat that if his offer was not accepted at once he would take employment to furnish evidence in another direction, which, as the record shows, he did in fact furnish, was proper evidence to go to the jury to be weighed and considered by them in determining the credit to be given to the witness; and for the error committed in excluding it, the judgment will be reversed.

It is unnecesssry to note more particularly the action of the court in overruling defendant's challenge for cause to four jurors, on the ground that from rumor and newspaper reports they had formed decided opinions, further than to say that the rule in reference to the competency of jurors is laid down in the case of *State v. Walton*, 74 Mo. 270, and that in passing upon the competency of jurors, the rule should not be pushed beyond the limits therein prescribed.

2. COMPETENCY OF JUROR, WHO HAS FORMED AN OPINION.

The instructions, taken as a whole, fairly presented the law of the case, although the third instruction relating to the law of self-defense is subject to criticism in that it is a slight departure from the customary language used in giving instructions upon that subject, and we will conclude our observations concerning it by repeating what was said in the case of the *State v. Kilgore*, 70 Mo. 557, that it is best to adhere to precedents long and well established, and that it is always hazardous to travel out of the beaten path.

3. PRECEDENTS.

Judgment reversed and cause remanded.    All concur.