JOSEPH E. BATSCH, Respondent, v. UNITED RAILWAYS COMPANY, of St. Louis, Appellant.

St. Louis Court of Appeals, November 2, 1909.

1. **STREET RAILWAYS: Evidence: Expert Motorman: Stopping Car with Air-Brake: Experience With Hand-Brake.** A motorman, who has had many years' experience in operating electric cars and in stopping them with hand-brakes and who has made observation of cars equipped with air-brakes, is qualified to testify as an expert as to the distance a car equipped with air-brakes and one equipped with hand-brakes could be stopped.

2. ————: **Instructions: Failure of Motorman to Keep Vigilant Watch.** In an action for personal injuries sustained by plaintiff by reason of a collision between a street car and a wagon driven by him, where there was evidence that the perilous position of plaintiff was visible to the motorman from three to six hundred feet away and that he made no effort to check the speed of the car, the jury might have inferred the collision was due to his negligence in failing to look ahead, as he should have done, or else to take proper precautions to stop the car after he saw the danger, and the court properly submitted both theories as grounds of recovery.

3. ———: ———: Refusal: Position of Car When Perilous Situation Arose. In an action for personal injuries sustained by plaintiff in a collision between a street car and a wagon he was driving, which occurred at a point between Fair and Pansy avenues, an instruction asked by defendant, which charged the jury they should return a verdict for defendant, if they believed the car was at Fair avenue, when plaintiff's horse got on the track and in a situation of danger, was properly refused. The essential part was not whether the car was at Fair avenue when plaintiff's peril became visible, but whether it was far enough away to have enabled the motorman to stop it by the use of ordinary care in time to avoid a collision.

4. ———: ———: Authorizing Verdict if Negligence Contributed to Cause: Contributory Negligence not Pleaded. In an action for personal injuries sustained by plaintiff, by reason of a collision between a street car and a wagon driven by him, where contributory negligence was neither pleaded nor proved as a defense, whether an instruction which directed a verdict for plaintiff if they found defendant's negligence directly contributed to cause the accident, is error, under Hof v. Transit Co., 213 Mo. 445 quaere.

5. EVIDENCE: Witnesses: Impeachment: Acknowledgment of Signature to Statement Sufficient Foundation. A written statement, contradictory to testimony given by a witness, which he acknowledges to have signed, is admissible in evidence to impeach him, although he is not interrogated concerning its contents.

Appeal from St. Louis City Circuit Court.—*Hon. Dan'l G. Taylor*, Judge.

REVERSED AND REMANDED.

*Boyle & Priest* and *Glendy B. Arnold* for appellant.

(1) The court erred in permitting witnesses Carter and Hurley to testify as experts on the stopping of cars because it was not shown that they were experienced in the operation of cars of the kind in question, or in the handling of air-brakes such as were used on the defendant's car. Mamerberg v. Railroad, 62 Mo. App. 563; Culbertson v. Railroad, 140 Mo. 59; Heinzle v. Railroad, 182 Mo. 554; Gourley v. Railroad,

35 Mo. App. 92. (2) The court erred in permitting witness Carter to testify in what distance a car could have been stopped because the hypothetical question put to the witness omitted essential facts to a fair and intelligent answer. Mamerberg v. Railroad, 62 Mo. App. 563; Culbertson v. Railroad, 140 Mo. 59; Heinzle v. Railroad, 182 Mo. 554; Gourley v. Railroad, 35 Mo. App. 92. (3) The court erred in excluding defendant's "Exhibits C. and D." Defendant had the right to show that plaintiff's witness, Mrs. Maud Knickmeyer, had made contradictory statements out of court. Leahey v. Railway, 97 Mo. 165; Wigmore on Evidence, sec. 1025. (4) The court erred in giving plaintiff's first instruction because that instruction required the jury, in returning a verdict for plaintiff, to find only that the negligence therein submitted, directly contributed to cause said car to strike said horse, etc., instead of requiring the jury to find that said negligence caused said collision. Hof. v. Transit Co., 111 S. W. 1166, 1171. (5) The court erred in giving the jury the third and fourth paragraphs of plaintiff's second instruction on the measure of damage because there is no evidence in the record that plaintiff would, in the future, suffer any pain of body and mind, or that plaintiff would, in the future, lose any of the earnings of his labor on account of said injury. Slaughter v. Railroad, 116 Mo. 275; Heinzle v. Railroad, 182 Mo. 528. (6) The court erred in refusing defendant's second instruction because all the evidence for plaintiff showed, and plaintiff's theory of the case was, that the car which struck his horse and wagon was at Fair avenue at the time his horse got on the west-bound track in a place of danger. (7) The court erred in refusing to give defendant's third instruction because the evidence wholly failed to show that defendant's motorman failed to keep a vigilant watch for plaintiff, and defendant was entitled to instruction withdrawing that specification of negligence from the jury. It is error

to submit an unsupported allegation of negligence to the jury. Heinzel v. Railroad, 182 Mo. 528.

*A. R.* and *Howard Taylor* for respondent.

(1) There is no claim in this case that the court ought to have sustained a demurrer to the evidence. (2) There is no claim in this case either in the answer or elsewhere that the plaintiff was guilty of contributory negligence; in this respect, the case is relieved from the effect of the opinion and abstruse reasoning of the court in the Hof case. (3) The witness Carter was clearly competent to express an opinion as to the distance within which the car in question could be stopped with a hand-brake. He had ten years' experience as a motorman. He saw and was fairly familiar with the condition of the track at the very time of the accident. The track was "dusty." He saw the length of the cars so as to form an opinion as to their length; had operated such cars; knew the grade of the track as slightly up grade; all this he testified to. He knew there were but few, if any, passengers on the car. The car was lightly loaded. These were facts that he saw and testified to. With such knowledge, he gave as his opinion, the car could have been easily stopped in forty or forty-five feet; the motorman said it could be stopped in fifty or sixty feet. An opinion upon such a question, as the distance in which an ordinary car running over an ordinary track with ordinary equipment, is of such common knowledge that it is about time that it ceased to be a question for an expert. Especially is this true when there is the broad admission in the record, that upon plaintiff's evidence the car could have been stopped (p. 63 of abstract). The Supreme Court in the case of Wise v. Railroad, 198 Mo. 557, holds that, with such state of facts before them it was a question a jury could determine without aid from expert testimony. "It was a question of fact

upon which the jury was competent to pass without the aid of expert testimony." Expert testimony is simply advisory—it does not bind a jury in any case, not even on question of science or skill. Hoyberg v. Hinsky, 153 Mo. 74; Markey v. Railroad, 185 Mo. 364; King v. Gilson, 191 Mo. 329; Cosgrove v. Barton, 104 Mo. App. 704; Ristitsky v. Railroad, 106 Mo. App. 389; Elmer v. Kansas City, 110 Mo. App. 656. The opinion of Carter as to the space in which such a car as he knew and saw could be stopped with a hand-brake, coupled with his knowledge that with the air-brake which was shown to have been used, could be stopped quicker, we think was entirely competent. (4) The third contention of appellant's brief has no relevancy. It is over the refusal of the trial court to allow to be read statements in a paper signed by a witness without asking the witness whether she made any of the statements specifically. The rule being that in order to impeach a witness upon contradictory statements made elsewhere, the attention of the witness must be called by question to each statement so as to give opportunity to explain if admitted. This rule is affirmed in Wigmore on Evidence, section 1025, and authorities therein and is authority against appellant's contention. The case of Leahy v. Railroad, 97 Mo. 165, appears to have no relevancy whatever; it is in that case a question of *res gestae* and not impeachment that is decided. (5) Here is an exemplary case for the application of the statute against reversals on trivial immaterial contentions or grounds. R. S. 1899, sec. 865; Hamford v. Kansas City, 103 Mo. 183; Brettger v. Scherfer, 124 Mo. 252; Clark v. Cox, 118 Mo. 652; Burns v. Liberty, 131 Mo. 578; Wagner v. Electric Co., 82 Mo. App. 299; Woody v. Railroad, 104 Mo. App. 684.

This is an action to recover for personal injuries to plaintiff and also damage to his horse,

wagon and merchandise in the wagon. His head was bruised and his right arm fractured both above and below the elbow, leaving the arm stiff, he testified. His horse was alleged to have been damaged to the amount of fifty dollars, the wagon to the amount of one hundred dollars and the merchandise in it to the amount of twenty-five dollars. These injuries were caused by a collision with one of defendant's street cars on Lee avenue, an east and west thoroughfare in the city of St. Louis, on June 22, 1907. Mr. Glendy Arnold's brief for defendant states the facts thus: "Plaintiff was a man forty-seven years of age, an old resident of St. Louis, and for many years prior to his injury on June 22, 1907, had been engaged in the nomadic and mellifluous pursuit of peddling candy to whomsoever would buy his wares. He was a denizen of the streets, knew its juggernauts and was proud of his skill in handling the reins, although it appears his experience as a whip had been limited to old plugs and candy wagons. Plugs, and particularly the poor old victim of his skill, at the time and place in question, so gentle that children could be entrusted to their fostering care. In fact, nothing short of an explosion of dynamite under his tail, or a steam roller belching smoke and steam like a volcano, could arouse this old nag out of a jog faster than the second coming of the Messiah. But when he did get woke up with fright he just 'pranced and danced,' so that any durned fool motorman a mile off could tell he was just waiting to plunge head first into the front end of his car. It was on a bright sunny day and a dry level track that plaintiff was ushered into his forty-sixth year and this little mix-up with a westbound car. He said he never would forget it, as it was on his birthday.

"Lee avenue is a public highway and runs east and west. Pansy and Fair avenues intersect Lee avenue a block apart, running north and south—Pansy avenue lying to the west of Fair avenue. Lee avenue

between the above named streets was in the course of reconstruction, excepting the sidewalks and the space occupied by defendant's tracks. The car tracks afforded the only place for wagon traffic between Pansy and Fair avenues. Plaintiff entered the aforesaid block at Pansy avenue, trailing the east-bound track. He had not gone more than one hundred and twenty-five feet east of Pansy before his progress was suddenly halted by his gentle steed taking fright at a steam roller within five feet of said east-bound track and about thirty feet away, which was, to the great dismay of this erstwhile specimen of gentleness and amiability, emitting steam and black smoke; whereupon Old Remus woke up, and before the skill of Joe Batsch, for henceforth he must be known to fame as a great candy whip, could prevent, he had planted his fore feet between the two tracks, and pulling and tugging at the lines, but not moving an inch, he disjointed every vertebra from hames to crupper, trying to got his head right square in the middle of the west-bound track; and there he stuck until the stuffing was rammed out of him by the car. And when Old Remus got his fore feet between the two car tracks and his head out in the middle of the west-bound track, how he did 'prance.' (Batsch lisps his c's.) He did every acrobatic feat that a man or horse can do except skin the cat. A blind motorman a block away could have seen the anxiety of this fool horse to enjoy the delightful sensation of a head-on collision. We are advised by Mr. Batsch, under the sanction of his oath, that when Old Remus established his headquarters on the west-bound track, leaving his hind-quarters and Batsch to fight it out on the east-bound track, the oncoming car was then at Fair avenue, which by a most favorable computation was a distance of three hundred feet."

Instead of the car stopping as it had time to do, before hitting the horse, according to plaintiff's witnesses, it came along at a rapid rate and collided with

the horse and wagon, inflicting the injuries mentioned. The testimony for defendant tended to prove the horse did not swerve into the north car track until the car was within thirty feet of it and so near it could not be stopped quickly enough to prevent a collision. The negligence pleaded was disregard by the motorman of what is called the "Vigilant Watch Ordinance" of the city of St. Louis, a municipal regulation which requires motormen of street cars to keep a vigilant watch for persons and vehicles on the car track or approaching it and in danger of being injured, and on the first appearance of such danger, to stop the car in the shortest time and space possible with the means and appliances at hand. The gravamen of the petition is the motorman failed to do as the ordinance required, both as regards a vigilant outlook and stopping the car as soon as possible on the first appearance of danger to plaintiff, thereby "directly contributing" to cause the injuries to plaintiff and his property. The answer was simply a general denial, no plea of contributory negligence having been put forward.

Two witnesses, Carter and Hurley, testified as experts as to the distance in which the car, which had an air-brake, could have been stopped. Carter testified he had had ten years' experience as a motorman, but never on a car having air-brakes; knew the cars that ran on the particular track where the accident happened; had seen them passing up and down there; they were equipped with air-brakes when he was running and he presumed they had hand-brakes at the time of the accident. He testified the track was dry at that time and the grade very slightly upward; that with a good track and a hand-brake, an ordinarily prudent motorman could stop a car going at the speed of the one in question was in two carlengths, or forty to forty-five feet. His testimony was excepted to on the ground he had not qualified as an expert. So was Hurley's. This

143 App—5

witness said he had operated street cars as a motorman for about eleven years in St. Louis, and for about eight months had run cars equipped with air-brakes at the World's Fair Grounds; knew the cars operated on the Lee avenue line at the date of the accident, or knew similar cars; that such a car equipped with a hand-brake, running eight or ten miles an hour, with a load of four or five passengers, would be stopped by an ordinarily prudent motorman in ten feet. A witness by the name of Maud Knickmeyer had testified for plaintiff. At the time of the accident her name was Maud Fleshman, but she had married subsequently. On September 25th, she gave a statement regarding the accident, which tended to contradict her testimony given on the stand in respect of the distance the car was from the horse when the latter first swerved on the north track. This statement was offered in evidence but excluded by the court and an exception was saved to its exclusion.

The main instruction given for plaintiff authorized a verdict in its favor provided the jury found the facts of negligence predicated in it had occurred and that they had directly contributed to cause plaintiff's injuries. The instruction on the measure of damages was also excepted to because it allowed damages to be awarded for such pain of body and mind as plaintiff might suffer from his injuries in the future, when, as defendant contends, there was nothing to prove he would have such sufferings in the future. Complaint is made of the refusal of the court to grant an instruction requested by defendant which said plaintiff could not recover unless the jury believed the car was at Fair avenue at the time plaintiff got on the track and in a situation of danger from the car. Also because the court refused to instruct plaintiff was not entitled to recover on the charge that defendant's motorman was negligent and failed to use ordinary care to watch for and discover plaintiff's horse in a situation of danger

on the track. The ground of the refusal of this instruc-
tion is the supposed lack of evidence tending to prove
defendant's motorman failed to keep a vigilant watch.

Plaintiff had a verdict and judgment having been
rendered on it, defendant appealed.

GOODE, J. (after stating the facts).—We over-
rule the assignment of error relating to the supposed
incompetency of the two witnesses Carter and Hurley
to testify as experts regarding the distance in which
the car could have been stopped. Those men had had
many years' experience as motormen in operating elec-
tric cars, though it is true Carter never had operated
one which was equipped with an air-brake. Hurley had
had eight months' experience with that kind of a car.
The testimony shows without dispute a car with an air
brake could be stopped in a shorter time and space than
one equipped with a hand-brake. Both men testified as
to the distance in which the car could have been stopped
if equipped with a hand-brake, and also as to the time
in which it could have been stopped with an air-brake.
Though Carter had not operated cars of the latter kind,
his long experience with hand-brake cars and his sub-
sequent observation of those equipped with air-brakes,
we think qualified him to testify as an expert. Hur-
ley's qualifications were beyond question.

We overrule, too, the exception to the hypothetical
question propounded to these experts, or at least to one
of them. This question is said not to have included
all the essential facts, but we think it did. The car
in question was thoroughly described, and the testi-
mony shows it did not materially differ from other
cars which had been in general use in the city and
operated and observed by the witnesses. The essential
facts were covered by the question, and that was
enough. [Gourley v. Railroad, 35 Mo. App. l. c. 92.]

It is contended the court should have instructed
against a recovery for lack of vigilant watch by the

motorman because there was no evidence to show he was not keeping vigilant watch. This position is untenable. There was much evidence that the perilous position of plaintiff and his property was visible to the motorman from three to six hundred feet away, if he was watching. If witnesses for plaintiff are to be believed, the motorman made no effort to check the speed of the car, and the jury might infer this was due to negligence in failing to look ahead as he should have done, and hence failing to see plaintiff's danger, or else to take proper precautions to stop the car after he saw the danger. The latter would be the less charitable view and the other was warranted by the evidence. The court did right to submit both grounds of recovery for there was evidence to prove both.

We do not perceive the force of the assignment of error because of the refusal to instruct against a recovery unless the jury believed the car was at Fair avenue when the horse got on the track and in a situation of danger. The essential point was not whether the car was as far east as Fair avenue when plaintiff's peril became visible, but whether it was far enough away for the motorman to stop by the use of ordinary care in time to avoid a collision.

As the judgment in the case must be reversed for another error, we will not take up the question of whether the main instruction for plaintiff was erroneous in directing a verdict in his favor if the jury found defendant's negligence directly contributed to cause the accident, instead of requiring them to find said negligence caused the accident. No doubt the charge would be erroneous if the defense of contributory negligence had been set up and supported by testimony. [Hof v. Transit Co., 213 Mo. 445, 111 S. W. 1166.] But as no such defense was in the case, we are not sure that decision of the Supreme Court is in point.

Mrs. Knickmeyer had given a statement regarding the accident to a man named Kavanaugh, September

25, 1907, some three months after it occurred. We suppose Kavanaugh was an employee of defendant. In this statement she said that on June 22, 1907, at about eleven o'clock in the forenoon, she was cleaning windows at her home on Lee avenue, standing on the ground in front of her house; that she saw plaintiff's candy wagon passing along on the track to the east, watched his horse to see how he would act, as she had seen other horses "cut up" as they passed the steam roller; that when plaintiff's horse came to the roller it was puffing and making a noise, and "when the horse came up to it, he became frightened and suddenly swung over onto the west-bound track directly in front of a car which was coming west and which was not over fifteen feet east of where the horse swung over; the car struck the horse, knocked it over to the east-bound track and the horse was lying about the rear end of it when it stopped." She said further she heard no gong rung and the car was running at a pretty good rate of speed. This statement was signed by her under the name of Maud Fleshman, her maiden name. On the witness stand at the trial this witness testified, among other things, about the roller in the street, and that when she first noticed plaintiff and his wagon she was in the front yard cleaning windows; that she yelled to a friend there was going to be an accident, she was sure; the next thing she saw Mr. Batsch fell into the street and strike his head on a manhole. She then testified as follows: "Q. When the horse began to prance, how far away was the car? A. It was near Fair avenue." Now Fair avenue, according to the witnesses, was three hundred feet, or more, away, and this testimony of the witness on the stand was in conflict with her written statement that when the horse turned on the north track the car was only fifteen feet away; at least it appears to have been, and the jury might find it was. On cross-examination she was asked if Kavanaugh interviewed her about the accident on

September 27, 1907, and said he did; that she told him all about it in the presence of her mother and thought he wrote down what she said; that at least he wrote down on a paper things she said about the accident. Thereupon her written statement was handed to her and she was asked to examine it and see if it was the paper she had signed. She read the paper and answered that it was her statement with her signature at the bottom in her own handwriting, and her mother was present when she made the statement. The document was afterwards offered in evidence by defendant's counsel as an impeaching one, and plaintiff's counsel objected to its reception on the ground that no proper foundation for its introduction had been laid. The court sustained this objection and defendant excepted. This ruling was clear error. We have been cited by plaintiff's counsel to no authority which would support it, all that is said being that the written statement was not part of the *res gestae* and hence inadmissible on said score, and no foundation was laid for its reception to impeach the witness. It was not offered as part of the *res gestae*, but as a statement made by the witness out of court which contradicted what she testified on the stand; and that, too, on the most material issue of the case. It is insisted she should have been interrogated by defendant's counsel as to whether she made certain of the statements contained in the document; particularly whether she said the horse swung over on the track directly in front of the car when it was not more than fifteen feet away. If the attempt to impeach her had been by contradictory oral statements out of court, this position would be well taken; but it is untenable as the attempt was to impeach her by a writing she unqualifiedly admitted having signed as her narrative of the facts of the occurrence. Mr. Greenleaf says a sufficient foundation is laid for the admission of an impeaching writing signed by a witness by the acknowl-

edgment of the witness that it is his writing. [1 Green-leaf, Evidence (Lewis Ed.), sec. 465.] In State v. Stein, 79 Mo. 330, it was sought to impeach a witness by a letter. During cross-examination of the witness, the letter was handed to him, and he was asked if he wrote it, to which he gave an affirmative reply. After the witness left the stand, counsel offered to read the letter; it was objected to and the court excluded it on the ground the witness ought first to have been examined as to its contents. The Supreme Court held this ruling was erroneous and proceeded on the theory only applicable to verbal statements offered to impeach a witness; that when the impeaching evidence is a writing made by the witness, the writing must first be shown to him as the foundation for its introduction, and if he admits he wrote it, the writing must then speak for itself; citing Greenleaf, supra. In State v. Gonce, 87 Mo. 629, testimony given by the defendant was impeached by an affidavit for continuance he had made. He was not interrogated regarding the contents of the affidavit, but it was shown to him and he admitted the signature was his. This was held to be a sufficient foundation for the reception of the writing.

There was evidence to prove plaintiff would suffer in the future from his hurts, and so the court rightly instructed regarding future suffering.

The judgment is reversed and the cause remanded. All concur.