Gilbert DOLGIN, d/b/a, G. Dolgin Candy
& Tobacco Company,
Plaintiff-Appellant,

v.

POTTER ELECTRIC SIGNAL CO., a corporation, d/b/a Potter Electric Signal & Manufacturing Co., d/b/a Merchants Alarm Service, Defendant-Respondent.

No. 36128.

Missouri Court of Appeals,
St. Louis District,
Division Two.

April 6, 1976.

**62**

Dolgin, Juncker & Bielenson, Clayton, for plaintiff-appellant.

Evans & Dixon, Eugene K. Buckley, St. Louis, for defendant-respondent.

KELLY, Judge.

This appeal from a judgment of the Circuit Court of the City of St. Louis wherein the trial court sustained respondent's motions for directed verdict on Counts I, III and IV of appellant's Second Amended Petition and a jury found for the respondent on Count II of said Second Amended Petition, raises three grounds of alleged trial error which appellant contends entitle him to a reversal of the judgment and a remand to the trial court for a new trial. We have examined the three points and find them to be without merit. We therefore affirm.

Count I of appellant's Second Amended Petition alleged that he entered into two written contracts with the respondent on July 8, 1963, and July 15, 1963, whereby respondent was to provide an electric burglar alarm system to appellant's premises; that on November 23, 1967, the premises were burglarized and the burglar alarm system was unfit for the purpose for which it was intended in that it failed to notify the respondent that appellant's premises were being burglarized; that by reason of the failure of the burglar alarm system the burglary of the premises went undetected so that merchandise, money and miscellaneous items were stolen from the appellant's premises valued in an amount of $10,158.04. Count II alleged essentially the same allegations in Count I and further alleged that the failure of the burglar alarm system was due to the manner in which the system was

installed by the respondent in that some of the electrical wiring was exposed so that it could be made inoperable by cutting of the exposed wiring. Count III was based upon fraud and alleged that respondent through its agents, intending to deceive appellant and induce him to purchase the particular burglar alarm system, made false and fraudulent representations that the alarm service and protective service could not be made inoperable by the breaking or cutting of any of the wires of the system and that once the alarm had commenced sounding, the total alarm system could not be stopped or made inoperable except by the use of a "shunt key" which would turn off the entire system, whereas in fact, the entire system could be and was rendered inoperative by the cutting of the exposed wires; that at the time of making these statements the respondent's agents knew that the statements were false and that the appellant had a right to rely, and did rely, on these statements, was thereby induced to purchase, and did purchase the burglar alarm system, and was thereby damaged in an amount of $10,158.04 when his premises were burglarized and the alarm system did not function. Count IV realleged all of the allegations contained in Count III and sought punitive damages in an amount of $100,000.00 for the alleged fraud or the utter disregard of appellant's rights. Respondent's Answer in the trial court admitted that it entered into a written agreement with the appellant for the installation and maintenance of an electric alarm system in appellant's premises and denied all other allegations of the Second Amended Petition other than those relative to the corporate existence of the parties and the nature of appellant's business. In further answer, respondent alleged liquidated damages in an amount of $50.00 under the Merchant's contract and $55.00 under the Potter contract.[1] It further pleaded that the failure of the alarm system to notify respondent of the burglary was due to causes beyond its control. With the pleadings in this state the cause was tried.

The evidence at trial was that in 1963, Gilbert Dolgin, d/b/a Dolgin Candy & Tobacco Co. moved into the premises at 3697 Market Street in the City of St. Louis. Prior to making the move he sought to ascertain from a number of burglar alarm companies different systems available to him for protection against burglaries. In his former location he had an alarm system consisting of a "local bell" on the outside of the store which when activated would ring loudly alerting those within earshot that an attempt to enter the business premises had been made or accomplished. He talked with Clarence Baker of Merchants Alarm Company and with Alexander Hill of respondent Potter Electric Signal Company sometime prior to July, 1963, and had decided to install an L.A.T. System (Late Alarm System) sold by Merchants with the local bell part of the system to be supplied by Potter. It was stipulated between the parties at trial that Potter had bought out Merchants sometime in June, 1963, but this was not revealed to Mr. Dolgin and Mr. Hill denied that he had any knowledge of the fact during his negotiations with Mr. Dolgin prior to the execution of the contracts with Potter on July 8, 1963, and with Merchants on July 15, 1963. During his negotiations with Mr. Dolgin, Mr. Hill recommended the installation of a "direct line system." The difference between the two systems is that in the direct line system any interruption in the circuit of the burglar alarm system is immediately reported to the central office of the burglar alarm service which can immediately notify the police and the owner that the premises have been broken into. The Late Alarm System, on the other hand, consists of a bell located on the premises which is activated when a circuit is broken and commences ringing to attract the attention of anyone in the vicinity; then, within 35 seconds, an alarm is sounded at the central office of the burglar alarm service which can thereafter notify

---

1. Merchants Alarm Service shall hereinafter be referred to as "Merchants" and Potter Electric Signal Co. as "Potter."

the police and the owner of the break-in. Mr. Dolgin preferred the latter because he was of the opinion that the sounding of the bell would drive off the burglars whereas the absence of a bell would afford a burglar an opportunity to leave the scene with some of his merchandise before the police arrived. Furthermore, it was more convenient, because the Late Alarm System was placed in operation by the use of a "shunt key" inserted from the exterior of the building into the system thereby turning the system on. This would allow 35 seconds to open the door and activate the bell to see to it that the system was functioning. So long as the door was closed within 35 seconds the central office would not be alerted. This Mr. Dolgin said he could not do with the direct line system. The direct line system was, in Mr. Hill's opinion, the better system for Mr. Dolgin considering his location and the nature of his merchandise. Mr. Dolgin had decided upon the installation of the Late Alarm System with Mr. Baker and the installation of the local bell component with Mr. Hill. There was some conflict between the testimony of Mr. Dolgin and Mr. Hill whether both contracts were delivered to Mr. Dolgin simultaneously. Mr. Dolgin testified they were and Mr. Hill's testimony was that he delivered only the Potter contract. The difference in the dates on the contracts was due to the fact that Mr. Baker was out of town and could not witness the Merchants' contract until a week after he returned. Although Mr. Dolgin indicated to Mr. Hill that he wanted to go over the contracts with his lawyer, he testified that he was urged to, and did sign them without consulting with his lawyer about them.

On November 23, 1967, appellant was contacted by the St. Louis Police at his home and informed that his business premises had been burglarized during the night. He went from his home to the business and observed that a layer of bricks had been removed from the east wall of the building and the back doors were knocked in with one of the doors hanging on its hinges. The interior of the premises was in complete disarray. Merchandise valued at $10,150.00

was missing. Mr. Wagner, an employee of Potter, was at the premises when Mr. Dolgin arrived and both checked the burglar alarm system. Mr. Dolgin observed that the shunt lock was in the "on" or activating position and that the wires leading from the bell to the alarm system inside the premises had been cut. It was the severing of these wires which deactivated the system thereby preventing transmission of the signal to the central offices of respondent. When these wires were spliced and taped together the system functioned. Mr. Dolgin testified that Mr. Hill had told him prior to entering into the contract with Potter that the only way the alarm system could be turned off once it was turned on was by use of the "shunt key."

Respondent's evidence consisted of the reading of the two contracts, and at the conclusion of all of the evidence its Motions for Directed Verdict as to Counts I, III and IV were sustained by the trial court. Count II of appellant's Second Amended Petition was submitted to the jury and, as stated above, a verdict for the respondent was returned.

Appellant's first point is that the trial court erred in permitting the respondent's counsel, "in closing argument . . . to argue against pleaded *causes of action* on which motions for directed verdict had been previously granted, and which were not instructed on." (Emphasis supplied).

Respondent argues that appellant did not preserve this claim of error for review for the reason that he did not object on these grounds in the trial court. We agree that not only for the reasons stated by the respondent has appellant failed to preserve this point for review, but although we have searched his motion for new trial we find no allegation of trial error therein directed to "closing argument" as stated in appellant's first point relied on in his brief. The allegations in appellant's motion for new trial, paragraphs 5 and 6 are directed to the trial court's permitting respondent's counsel to "state to the jury, *during the defendant's case*" that the Counts for mis-

representation and fraud were filed approximately two years after the original pleadings had been filed. We are further of the opinion that this point as stated is in direct violation of Rule 84.04(d) in that it is an abstract statement which does not state briefly and concisely what actions or rulings of the court are sought to be reviewed *and* wherein and why they are claimed to be erroneous. Nevertheless, we have examined the record and find that what the appellant sought to present as trial error was respondent's argument with reference to certain evidence which came in during the course of trial with respect to Counts III and IV, which had been taken from the jury's consideration by the trial court's action on respondent's motions for directed verdict. Only one objection was made during this line of argument: "Same objection, Your Honor." This came at a point in respondent's argument where it was being argued that the lawsuit was filed by appellant's brother, a lawyer, about a year after the burglary, and in the context that if it were a fact that Mr. Hill had made any false representations to Mr. Dolgin would that not have been the "keystone" of the lawsuit from the very moment it was filed. An objection as formulated here preserves nothing for review. The purpose of an objection is to call to the attention of the trial court that which the objecting party considers to be error and the objecting party has the burden of making the basis of his objection reasonably apparent to the court. *Crabtree v. Reed*, 494 S.W.2d 42, 45[4] (Mo. 1973). A perusal of the transcript of the record reveals that the only prior objection to respondent's closing argument made by appellant's counsel was an objection that the contract spoke for itself. It is clear that appellant's objection did not meet the test of *Crabtree v. Reed*, supra, and for that reason preserved nothing for review.

Appellant, in a memorandum of law on additional points relied upon in support of this point cites cases which hold that when a party has duly objected to a certain type of evidence and the objection has been overruled it is not necessary that he repeat the objection to further evidence of the same type. *Brug v. Manufacturers Bank & Trust Co.*, 461 S.W.2d 269 (Mo. banc 1970), *State ex rel. State Highway Commission v. Offutt*, 488 S.W.2d 656 (Mo.1972). This rule he contends should be applied here because he made an objection prior to the beginning of trial with respect to any reference being made by counsel for the respondent to the fact that Mr. Dolgin's brother, Joseph Dolgin, was one of appellant's counsel's partners because the jury might feel that the appellant was not paying an attorney's fee and was bringing the suit without any foundation by reason of the fact his brother happened to be an attorney. The trial court overruled this motion. Faced with that ruling appellant's counsel stated to the trial court and opposing counsel that he himself would bring out the relationship on voir dire examination of the jury.

The difficulty with appellant's position in this respect is that he has not preserved for review in this Court whether the trial court was guilty of error in the first instance in ruling that the relationship between the appellant and one of trial counsel's partners could be mentioned to the jury. Furthermore, as we have pointed out heretofore, he has not property preserved this point for review for other reasons. We will not require that a trial court in the midst of argument he expected to refresh its recollection and refer back to pre-trial proceedings for the purpose of placing an objection in the proper context. That is trial counsel's duty, and here he utterly failed to point out to the trial court what earlier objection he was referring to. We rule this point against appellant.

Appellant's second point is that the court erred in withdrawing the issues of fraud, misrepresentation and punitive damages from the jury. Here again appellant has failed to comply with the requirements of Rule 84.04(d) and once more has made an abstract statement without supportive reasons why the action of the trial court complained about was erroneous. We simply do not have the time to study the argument portion of the brief to determine the reason

appellant contends the trial court erred, when appellant could have saved us this labor. *Griffin v. State,* 513 S.W.2d 706, 708 (Mo.App.1974). However, we have read the argument portion of his brief and examined the transcript and find no error in this respect. The thrust of appellant's argument is that Mr. Hill misled him when he told him that the only way to turn off the alarm system once it had been activated was with the shunt key, whereas the alarm system was, as a matter of fact, rendered inoperable by the cutting of the wires. Appellant, by his own testimony, when Mr. Hill suggested a direct line system, told Mr. Hill that he "was already taken care of." Appellant had already decided on the L.A.T. system and had determined to buy the bell apparatus from respondent. Mr. Hill's statement to Mr. Dolgin was directed to whether the alarm system could be *turned off* without the shunt key. One of the elements of fraud, at least, was missing. There was here no reliance on any statements by Mr. Hill in Mr. Dolgin's decisions to install the system he did, and the trial court did not err in sustaining respondent's motion for directed verdict with respect to Count III. Finding no error in this respect, we further conclude that the trial court ruled correctly in withdrawing from the jury's consideration Count IV wherein appellant sought punitive damages for fraud and misrepresentations.

 Appellant's final point—that the trial court erred in refusing to permit appellant to impeach Mr. Hill, whom appellant had called as his own witness, by use of prior inconsistent testimony given in a deposition is likewise without merit. The crux of appellant's argument in support of this point is what he considers a conflict in Mr. Hill's testimony relative to whether Mr. Dolgin signed the two contracts in Mr. Hill's presence. Mr. Dolgin had testified that he had and Mr. Hill testified that when he left the contract with Mr. Dolgin and then departed from Mr. Dolgin's office the contract was not then signed by Mr. Dolgin. We will not lengthen this opinion by setting out the contents of the deposition of Mr. Hill sought to be used as impeachment, but we agree with the trial judge who concluded that the statements contained in the deposition did not conflict with Mr. Hill's testimony in court on this point. The rule with respect to this type of evidence is that some *real inconsistency* must appear *prima facie* before evidence of alleged inconsistent statements become competent. *State of Missouri ex rel. Hy. Comm. v. Fenix,* 311 S.W.2d 61, 64[3] (Mo.App.1958). The trial court is clothed with discretion with respect to the extent of cross-examination as to collateral matters, and here there was no real issue in the case concerning these contracts. Mr. Hill had been called as a witness for appellant and was not recalcitrant nor unfriendly to appellant despite the fact he was in the employ of respondent Potter. After refusing to permit the use of the deposition for cross-examination the trial court did allow appellant's counsel to question Mr. Hill further and thereby elicit from Mr. Hill that he was not sure that when he left the contract with Mr. Dolgin it was not signed at that time by Mr. Dolgin. We conclude that the trial court did not err.

We affirm.

CLEMENS, P. J. and STEWART, J., concur.