**STATE of Missouri, Respondent,**

v.

**Frederick SIMMONS, Appellant.**

**No. 38030.**

Missouri Court of Appeals,
St. Louis District,
Division One.

Nov. 29, 1977.

Fredman, Watkins & Fredman, Richard
A. Fredman, St. Louis, for appellant.

John D. Ashcroft, Atty. Gen., Paul Robert Otto, Asst. Atty. Gen., Jefferson City, for respondent.

McMILLIAN, Judge.

Appellant Frederick Simmons appeals from judgments entered on jury verdicts in the Circuit Court of the City of St. Louis finding him guilty of forcible rape and robbery first degree. Appellant was sentenced to two concurrent terms of five years' imprisonment. For reversal appellant argues that the trial court erred in admitting into evidence: (1) certain impeachment evidence and (2) identification testimony. For the reasons hereinafter given, we affirm the judgments.

From the evidence presented, the jury could have reasonably found that on April 4, 1975, the prosecutrix, a twenty-year old university student, was walking toward her apartment building and saw two men sitting in the vestibule or area between the locked inner door and the unlocked outer door of the building. The vestibule was well lighted. As she unlocked the inner door, the taller of the two men, subsequently identified as Harold Derrick, grabbed her from behind and forced her inside. She was forced upstairs. Derrick threatened to kill her if she screamed and held a small gun to her head. Derrick demanded her purse, which contained $11.00 in one-dollar bills. At this point the prosecutrix collapsed to the floor, feigning unconsciousness, in an attempt to avoid being killed. Someone took her keys. Appellant returned after unsuccessfully trying to find her apartment and raped her. She testified that although Derrick continued to hold her head, she was conscious throughout and able to see appellant through Derrick's fingers.

When the police arrived, the prosecutrix was able to give them a general description of the two men as black, one much shorter than the other, and both wearing dirty old clothes. One of the police officers had seen two men who fit that description walking in the neighborhood of the apartment building when he answered the call. Two police officers then went to look for the men. They were picked up several blocks away. The police found a .25 caliber gas gun, which looked like a .22 caliber automatic and which the prosecutrix later identified as the gun she was threatened with, in appellant's pants pocket. The police found $11.00 in one-dollar bills and a key, later identified as the prosecutrix's apartment key, in Derrick's coat pocket. Derrick and appellant were handcuffed and taken back to the vestibule of the apartment building. The prosecutrix observed them and identified them as her assailants. This confrontation occurred about ten or fifteen minutes after the attack.

At trial appellant offered an alibi defense. He testified that he had been at home that night until about 12:30 a. m. Derrick came by at that time and appellant was walking Derrick home when the police stopped them. Appellant testified that Derrick had asked him to keep the gas gun. Appellant's mother and two of his sisters testified that appellant had been at home until after midnight.

Appellant's first argument is that the trial court erred in admitting into evidence a letter [1] written by appellant's mother to the prosecutrix as impeachment evidence. On cross-examination the prosecution asked Mrs. Simmons, appellant's mother, if she had written a letter to the prosecutrix apologizing for her son's involvement. Mrs. Simmons answered "No." The prosecution then sought to introduce the letter itself to impeach her testimony. Mrs. Simmons was questioned further about the signature on the letter and finally admitted that she had written it. The letter was admitted over defense counsel's objection.

1. " 'Dear Miss Silver. Prayerfully I am writing you this letter. First, I am so sorry about the fact that *my son was involved in the action concerning you Friday night, April, 5, 1975. I don't really know how to apologize to you. My reason for writing you is that my son is not a* talkative person and I don't know what happened. If you will in any way talk to me, I sure will appreciate it. *My phone number is 367–4943.* Thank you, Lottie Simmons.' "

" 'P.S. I am a mother, have seven daughters. I understand.' "

Specifically, appellant argues that the letter was improper impeachment because the content of the letter was not inconsistent with the witness' testimony, the subject matter was collateral, and the admission by the witness that she had written the letter foreclosed introduction of the letter itself into evidence. We disagree. Defense counsel's initial objection, made after Mrs. Simmons denied writing the letter, was "I object to that." This objection does not preserve anything for review. The trial court must be given an opportunity to rule upon an objection after hearing reasons for the exclusion. *State v. Lang*, 515 S.W.2d 507, 511 (Mo.1974); *State v. Jones*, 462 S.W.2d 661, 663 (Mo.1971). Moreover, it appears from the record that the consistent theory of objection, had the point been properly preserved, would have been that of prejudice. We note that the admissibility of potentially prejudicial evidence is within the discretion of the trial court, *e. g., State v. Morrow*, 541 S.W.2d 738 (Mo.App.1976).

Defense counsel objected to the introduction of the letter itself into evidence by stating it was ". . . improper cross-examination and impeachment on a collateral matter." The rule on the scope of impeachment in Missouri allows a party to impeach the testimony of an opponent's witness, provided such impeachment does not concern immaterial or collateral matters, *e. g., State v. Ball*, 529 S.W.2d 901 (Mo.App.1975); *State v. Alexander*, 499 S.W.2d 439 (Mo.1973). A collateral matter is one of no material significance in the case or is not pertinent to the issues as developed. *State v. Ball*, 529 S.W.2d 901, 907 (Mo.App.1975); *State v. Miles*, 412 S.W.2d 473, 476 (Mo.1967). The examining party is bound by the witness' answers on collateral matters, except for criminal convictions. *E. g., State v. Diamond*, 532 S.W.2d 873 (Mo. App.1976); *State v. Johnson*, 486 S.W.2d 491 (Mo.1972).

Appellant contends that Mrs. Simmons was impeached on a collateral matter; that is, on her belief that her son was not involved in the rape and robbery. We do not agree with appellant's construction of the disputed testimony or its characterization as a collateral matter. Appellant's theory of defense was that he had been home during the evening and early morning hours of that day. At issue was Mrs. Simmons' credibility as a witness when she testified her son had been home all evening and had not gone out until after 12:15 a. m. We do not believe that challenging the credibility of appellant's principal alibi witness is a collateral matter.

Appellant also argues that the letter was inadmissible as a prior inconsistent statement because the letter was not inconsistent with Mrs. Simmons' testimony. Appellant contends that the apology in the letter, ". . . I am so sorry about the fact that my son was involved in the action concerning you (the victim) . . ." and her testimony that "he said he wasn't [involved]" are not prima facie inconsistent statements. Missouri case law requires that ". . . some *real inconsistency* must appear *prima facie* before evidence of alleged inconsistent statements become competent. . . ." *Dolgin v. Potter Elec Signal Co.*, 536 S.W.2d 61, 66 (Mo.App. 1973); *State ex rel. State Highway Comm'n v. Fenix*, 311 S.W.2d 61, 64 (Mo.App.1958). It is unclear exactly what Mrs. Simmons meant in her letter; she may have been apologizing in very general terms. Her letter and her testimony state that she did not know what happened. Nonetheless, we believe that the statements themselves, in the letter and in her testimony, are prima facie inconsistent.

Appellant also argues that the admission by Mrs. Simmons on cross-examination precluded the introduction of the letter itself into evidence. The admission of a prior inconsistent *oral* statement into evidence is forbidden after the witness admits making the prior statement, *e. g., State v. Earvin*, 539 S.W.2d 615 (Mo.App. 1976); *State v. McCabe*, 512 S.W.2d 442 (Mo.App.1974). In this case, however, the witness' prior inconsistent statement was *written*. Mrs. Simmons examined the letter and admitted that it was in her handwriting. ". . . . [I]f the witness is fair-

ly afforded an opportunity to examine the written statement, and acknowledges to having signed it, it is admissible in evidence to impeach him, whether he was interrogated concerning its contents or not . . ." *George C. Porter Motor Corp. v. United States Cas. Co.*, 18 S.W.2d 133, 136 (Mo.App. 1929); see also *State v. Stein*, 79 Mo. 330 (1883); *Batsch v. United Rys. Co.*, 143 Mo. App. 58, 122 S.W. 371 (1909).

Appellant in his second point contends that the trial court erred in overruling his pretrial motion to suppress certain identification testimony. Appellant sought to suppress the prosecutrix's identification of appellant and Derrick as her assailants in a showup confrontation minutes after the rape and robbery. Appellant claimed at the pretrial hearing that the showup was unduly suggestive and therefore in violation of his constitutional right to due process. Appellant did not, however, object to the prosecutrix's in-court identification, and thereby failed to properly preserve this point for review, e. g., *State v. Young*, 534 S.W.2d 585 (Mo.App.1976); *State v. Yowell*, 513 S.W.2d 397 (Mo.1974).

Even though the point was not properly preserved, we will briefly examine appellant's arguments. We find them to be without merit. Appellant argues that the showup was unduly suggestive because appellant was in handcuffs and surrounded by policemen. Allowing the victim to confront a suspect who is handcuffed and in police custody does not necessarily render the confrontation impermissibly suggestive, e. g., *State v. White*, 549 S.W.2d 914 (Mo.App. 1977); *State v. French*, 528 S.W.2d 170 (Mo. App.1975). Appellant also argues that the prosecutrix's agitated state of mind made the showup unduly suggestive. In the absence of any evidence that her emotional state was so severe that her perceptions were affected, we cannot agree. *State v. Armbruster*, 541 S.W.2d 357 (Mo.App.1976). It is not improper for police to return the suspect to the scene of the crime for immediate identification by the victim. *E. g., State v. Barnes*, 537 S.W.2d 576 (Mo.App. 1976); *State v. Smith*, 465 S.W.2d 482 (Mo. 1971).

Furthermore, the in-court identification testimony was properly admissible, even if the showup was impermissibly suggestive, because there was an independent basis for identification. *State v. Jordan*, 506 S.W.2d 74 (Mo.App.1974); see also *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). The record indicates that there was adequate lighting in the apartment building, the prosecutrix had ample opportunity to view her assailants, and the prosecutrix was able to give the police a description adequate enough to aid them in identifying the two men on the street. The prosecutrix also made a very definite identification of the two men at the showup, only minutes after the crime.

Judgments affirmed.

CLEMENS, P. J., and SMITH, J., concur.