STATE of Missouri,
Plaintiff-Respondent,

v.

John J. SHAW, Jr.,
Defendant-Appellant.

No. 48807.

Missouri Court of Appeals,
Eastern District,
Division One.

June 25, 1985.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 5, 1985.

Application to Transfer Denied
Sept. 10, 1985.

Sarah Shelledy Pleban, Asst. Public Defender, Clayton, for defendant-appellant.

Thomas Chad Farris, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Judge.

Defendant appeals jury verdict of two counts of rape, § 566.030 [1] (I and VII); two counts of kidnapping, § 565.110 (II and IV); two counts of robbery first degree, § 569.-020 (III and V); and one count of sodomy, § 566.060(VI). Defendant was sentenced to a total of thirty-five years which includes three concurrent five-year terms for Counts I, VI and VII followed by consecutive sentences of five years on Count II, ten years on Count III, five years on Count IV and ten years on Count V. Defendant argues that the trial court erred in excluding a letter from an insurance company to the police department, in not permitting defendant to recall the prosecutrix and in allowing evidence of "rape trauma syndrome." We affirm.

The prosecutrix testified that on September 10, 1983 she and a female companion arrived at her home at about 4:00 a.m. after visiting an East St. Louis lounge. As they walked up to the house a man approached them with a gun wrapped in a towel. He told both women to get into a car which another man was driving. He then demanded everything that they had. The women gave him their jewelry and other items. They were taken to North-land Village Apartments where defendant sodomized and raped the prosecutrix. Her companion testified that she was raped by the other man. The assailants put a rag over the license plate, permitted the victims to alight from the car and then drove off. The victims started walking "and a fellow stopped" and gave them a ride to the prosecutrix' home. They subsequently reported the incident to the police, went to the Jennings Police Station and to the county hospital. The analysis of the sexual assault kits and the victims' clothing indicated that the women had had sexual intercourse.

The women gave the police a description of their assailants and the car. On October 1, 1983 the companion saw the car and reported the license number to the police. Defendant was stopped by Pine Lawn police officers on October 20, 1983 and then taken to the Jennings Police Department.

The prosecutrix identified the defendant and his accomplice in a photo display on October 24, 1983. The next day her companion identified the two men. At trial the prosecutrix identified the defendant as the man who raped her.

The defendant offered an alibi defense. Lynn Shaw and Helen Shaw both testified that on the date in question defendant was with them and that defendant spent the entire night with Lynn Shaw. Officer Stephen Nelke of the Jennings Police Department testified and read the list of the items taken from the prosecutrix. This list differed from what the prosecutrix testified to on direct and cross-examination as having been taken and reported stolen on the insurance claim.

Defendant attempted to introduce into evidence a letter the Metropolitan Insurance Company sent to the Jennings Police Department listing the jewelry the prosecutrix claimed defendant took from her and the value of all those items. Defendant noted that there were five items which were not reported to the police. The prosecuting attorney objected on the ground of relevancy stating that it was a collateral issue. The trial court sustained the objection. The defendant then asked to recall the prosecutrix "to testify as to exactly what she told the insurance company and how much that was worth." The prosecuting attorney again objected and the objection was sustained.

Defendant contends that the trial court erred in refusing to admit the letter or in the alternative to call the prosecutrix to testify concerning the items that she told the insurance company were stolen and

1. All statutory references are to RSMo 1978.

which were different from those reported to the police and noted in her court testimony. Defendant maintains that this should have been permitted to give the jury the opportunity to consider the prosecutrix' credibility and reliability. If the evidence had been admitted it would have shown the prosecutrix had told different stories.

When testifying for the state the prosecutrix said that she told the police an "engagement ring, the two wedding bands, a cocktail ring, a black onyx ring and an initial ring" were taken. On cross-examination she testified that she also told the police scalloped earrings, an onyx ring with three diamonds, three gold chains, and a seven inch herringbone bracelet were taken. She stated that she later made an insurance claim on these and many other items and that she told the police about all the items.

The defendant called Officer Nelke who read the list of items the prosecutrix gave him in her statement. This list consisted of one fifty-five point solitaire wedding ring set in yellow gold, two fourteen carat gold ringguards, one cocktail ring, a third carat diamond set in yellow gold, one eighteen inch serpentine gold necklace with fourteen solid gold beads, one pendant half carat diamond set in yellow gold, two one-half carat solitaire diamond earrings, one Pulsar lady's watch with black band, one blue hip bag containing $50.00 cash and various denominations, one leather snakeskin wallet with miscellaneous papers and identification, a cosmetic bag with miscellaneous cosmetics, and one key ring, initial A with ten keys. Officer Nelke said that the prosecutrix did not tell him about the gold scalloped earrings, an onyx ring with three diamonds, three gold chains, one serpentine, two herringbones, a seven inch herringbone bracelet, and an initial ring.

■ In Missouri a party may impeach the testimony of an opponent's witness, provided such impeachment does not concern immaterial or collateral matters.

*State v. Simmons,* 559 S.W.2d 557, 560 (Mo.App.1977). A collateral matter is one of no material significance in the case or is not pertinent to the issues as developed. *Id.*

■ The inconsistencies between the prosecutrix' direct testimony, cross-examination, and Officer Nelke's testimony are manifest. "Whether to allow recall of witnesses for impeachment purposes is a matter within the discretion of the trial court, *State v. Neal,* 350 Mo. 1002, 169 S.W.2d 686, 696[17] (1943)." *State v. Gilbert,* 544 S.W.2d 595, 599 (Mo.App.1976). There was no abuse of discretion here. The prosecutrix testified that she reported to the police all the items stolen. The police officer testified that several items were not reported. It was unnecessary to put the prosecutrix on the stand to reiterate what she had already testified to during cross-examination.

■ Defendant argues it was error to refuse to admit the letter from the insurance company to the police department. The letter contained information already known to the jury. The prosecutrix said she reported some items and the officer said she did not. Defendant wanted to introduce the letter to harm the credibility of the prosecutrix. We note first that this issue was not preserved for review because it was not included in the motion for new trial. *State v. Ford,* 585 S.W.2d 472, 474 (Mo. banc 1979). We review only for plain error and find none. The letter would not have impeached the testimony of the prosecutrix because it was consistent with what she claimed she told the police. The letter might impeach the testimony of the police officer because it contradicts the police report but a defendant may not impeach his own witness. *State v. Byrd,* 676 S.W.2d 494, 502 (Mo. banc 1984). At best the letter would have shown a conflict between the prosecutrix' testimony and the police report but that conflict was apparent by the officer's testimony. It was not error to refuse to admit the letter into evidence.

Defendant's second point on appeal finds error in the trial court's admission of medical records which described the prosecutrix' emotional state at the hospital claiming that this was inadmissible evidence of rape trauma syndrome. In *State v. Taylor*, 663 S.W.2d 235, 239 (Mo. banc 1984) the supreme court held that an expert may not testify that a prosecutrix has suffered rape trauma syndrome. The court noted that the use of the term rape trauma syndrome is improper because it suggests that the syndrome may only be caused by rape. *Id.* at 240.

In the case at bar the custodian of records for St. Louis County Hospital testified and read from the emotional trauma section of the sexual assault report for the prosecutrix that she was very quiet, subdued and crying quietly. Since the phrase rape trauma syndrome was never used in front of the jury this case is clearly distinguishable from *State v. Taylor*. The court in *Taylor* noted that an expert could state that a prosecutrix' symptoms were consistent with a traumatic experience so long as no conclusion concerning rape is given. 663 S.W.2d at 241. Here the record mentioned only that the prosecutrix was quiet, subdued and crying without specifying the reason for this behavior. There was no error in the admission of this evidence.

We affirm.

PUDLOWSKI, P.J., and CARL R. GAERTNER, J., concur.