STATE of Missouri, Respondent,

v.

William A. ALEXANDER, Appellant.

No. 57280.

Supreme Court of Missouri, Division No. 2.

Oct. 8, 1973.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Sp. Asst. Atty. Gen., St. Louis, for respondent.

Michael W. Reap, Public Defender Bureau, City of St. Louis, St. Louis, for appellant.

JULIAN M. LEVITT, Special Judge.

This is an appeal from a conviction on a charge of operating a motor vehicle without the consent of the owner, Section 560.-175, RSMo 1969, V.A.M.S. Since this appeal was pending here on January 1, 1972, the effective date of the 1970 amendment to the judicial article, the appeal comes within the exclusive jurisdiction of this court as set forth in Art. V, Sec. 3, Mo. Const.1945, V.A.M.S, as it existed prior to the amendment.

### I.

An automobile disappeared from a parking lot in St. Louis and when returned to the owner had $600 in damage. While in jail awaiting trial for driving that automobile without the owner's consent defendant wrote the following letter to Mr. Vandover, the victim: "To Mr. Vandover. Dear Sir, I write you this so I may express my concern for your loss. I realize you may not know me however I am being held and charged with operating an auto without your consent. I have talked to my attorney and he tells me you are an Assistant United States Attorney. This is why I write you this letter because I feel you must be a very understanding person to obtain such a job and I feel you are the only person in this case that can help me out of this trouble. But first let me explain how I come to be charged with this crime. I feel you can understand the letter better than the judge in the case. I feel I cannot get a fair trial because of the nature of this crime. Mr. Vandover, I am willing to pay you for any damage done to your auto however this is not a bribe. I write you because I would like to talk with you over this matter first before I appear in court again on this charge. I am being held in City Jail because I can't afford to make bond now that I am not working. But if it is not too much of a bother for you I

would like to talk this matter over with you right away. Please come down to see today if at all possible."

The prosecutor sought to introduce this letter in the course of his cross-examination of the defendant. Defendant's counsel objected on the ground that the letter was an offer of compromise, not relevant and contained no admissions by defendant. The objection was overruled and the letter admitted in evidence.

In most jurisdictions, an offer of compromise of a criminal charge, as by an offer of the payment of money to the victim of the crime in return for a dropping of the charge, whether or not accepted, may be received in evidence. 22A C.J.S. Criminal Law § 736, p. 1086. In a few jurisdictions an offer of compromise or restitution is not admissible unless it embodies an express admission of guilt. 22A C.J.S., p. 1087. Missouri follows the majority view, State v. Christian, 245 S.W.2d 895, 897 (Mo.1952), and an express admission of guilt is not required. The rationale of the majority view is that, contrary to the situation in civil cases, no good public policy would be promoted by rejecting an offer to compromise a criminal charge.

█ It is implicit in defendant's letter to Vandover that defendant was offering to pay for the damage to Vandover's car ($600) if Vandover would get the charge dismissed ("help me out of this trouble"). It can only be construed as an offer to compromise the criminal charge, although no admission of guilt was expressly made.

The learned trial judge properly admitted the letter written by the defendant to the victim.

## II.

The facts pertinent to an evidentiary issue raised on this appeal are as follows. On June 8, 1971, a 1968 Ford LTD belonging to Lewis G. Vandover was stolen from a parking lot in St. Louis. A report of a stolen automobile was made to the St. Louis Police Department. At the trial in the circuit court Charles Forister, a detective on the St. Louis Metropolitan Police Department, testified that he and his partner, William Jones, were parked at 16th and Franklin at approximately 11:15 p. m. on the night of June 8, 1971, when they observed the defendant operating a 1968 black over bronze Ford automobile on the 1600 block of Franklin. Officer Forister testified that defendant drove the car to 1710 or 1720 Franklin, a distance of about a block and a half, where he got out and went into a tavern. He testified further that after defendant got out of the automobile the two police officers checked the license number on the automobile defendant had been driving over the police radio and ascertained that it was a stolen automobile. They then parked in back of the automobile in question and some time after the defendant emerged from the tavern placed him under arrest. On cross-examination Officer Forister testified that *fifteen minutes* elapsed from the time that he and Officer Jones first observed defendant until they placed him under arrest. Officer Forister identified a photograph of the automobile defendant was driving taken shortly after the arrest showing the license number. It was the license number of Mr. Vandover's stolen car.

Officer Jones testified that on June 8, 1971, at approximately 11:20 or 11:30, while working with Officer Forister, he observed defendant operate an automobile west on Franklin, in the 1600 block, and park same in front of approximately 1630 Franklin, where the Cosmos Lounge was located; that he saw defendant exit the automobile and enter the Cosmos Lounge; that the license number on the automobile was checked via police radio and the automobile reported back by the dispatcher as stolen. Officer Jones testified that defendant came out of the Cosmos Lounge and stood in front of it. He further testified that upon receiving the information that the automobile was stolen he and Officer Forister immediately went to the Cos-

mos Lounge and arrested the defendant. On cross-examination, Officer Jones testified that from the time defendant alighted from the car and went into the tavern until the time that he was arrested, a period of approximately *five minutes* elapsed. Further, on cross-examination, he testified that the automobile defendant was driving was a 1968 and its color was "black over bronze—or gold bronze." Officer Jones also identified a photograph of the rear of the automobile defendant was driving taken at the scene of the arrest showing the license number that was checked by police radio and reported back as stolen.

John Vogan, an evidence technician in the police laboratory, testified that on the night in question he went to 1630 Franklin and processed the stolen car for fingerprints; that he lifted three latent fingerprints which he delivered to Harold Mitchell, a fingerprint expert in the St. Louis Police Department; that one of the fingerprints was taken from a rear-view mirror overlaid with two wire hangers on the original rear-view mirror on the car; and that he carefully removed the mirror and turned it also over to Patrolman Mitchell. Patrolman Mitchell testified that the latent prints from the overlaid rear-view mirror compared positively with the right thumb print of defendant taken June 10, 1971, at the St. Louis Police Station.

Defendant testified in his own behalf, against advice of his counsel. He denied that he had ever driven the stolen car. He admitted that he had ridden in it, however. Defendant testified that the first time he saw the stolen car was when he was in a park in Columbia, Missouri, with other persons on June 6, 1971, at which time one Leroy, whose last name he thought was Tyler, drove up in the car in question and asked defendant and others to show him around Columbia; that on June 8th he saw Leroy in the same automobile at 18th and Franklin Streets, St. Louis; that defendant rode around with Leroy in the car about 4:00 o'clock in the afternoon and that Leroy returned defendant to a bar at 18th and Franklin; that defendant got out of the car and entered the bar; that Leroy subsequently left with the car, saying he was going to his uncle's house; that later that evening defendant was in another bar, the "Cosmopolitan Bar," talking to the bartender when he noticed Leroy parked across the street in the car in question in front of a shoeshine parlor; that at Leroy's invitation and request he entered the car and went to his uncle's house where he attempted to borrow some money for Leroy unsuccessfully, but that on leaving he got from his aunt a "three by eight square" mirror which had overloops on it and which he attached to the rear-view mirror in Leroy's car; that Leroy returned him to the Cosmopolitan Bar, parking the automobile in front of the Cosmopolitan; that he was in and out of the Cosmopolitan Bar late in the evening and later was arrested there for car theft.

It is apparent from the foregoing that a sharply controverted issue of fact emerges from the evidence. The police officers testified that they saw defendant driving the car and that he was alone. The defendant testified that he never drove the car; that he only rode in the car and then only with Leroy driving. Further, Officer Forister testified that from the time he first observed defendant driving the car until the defendant was arrested fifteen minutes elapsed. Officer Jones testified that from the time defendant alighted from the car and went into the tavern until the time he was arrested, *five minutes* elapsed. Defendant, on the other hand, testified that the police watched the parked car in front of the tavern for approximately an hour before he was placed under arrest.

Since the defendant was charged with *driving* a motor vehicle without consent of the owner, whether defendant *drove* the vehicle was the crucial fact issue in the case. To attack the credibility of the State's two eyewitnesses, Officers Forister and Jones, defendant called as a witness Rose Ann Montefelice, a stenographer in the office of defendant's counsel, the Pub-

lic Defender, who made stenographic notes of the preliminary hearing, at which Officer Jones presumably testified, although at the trial in the circuit court he claimed to have no recollection of having testified at that hearing. The prosecuting attorney objected to any testimony by Miss Montefelice on the grounds that her notes were not an official record of the court in which the preliminary hearing was conducted. This objection was sustained. Defense counsel then offered to prove that Miss Montefelice had attended stenographic school; had had three years of experience, had taken notes in approximately fifteen hundred preliminary hearings and was a qualified stenographer. He further offered to prove that her stenographic notes would show that Officer Jones had testified at the preliminary hearing that on the night in question he observed the defendant in a *"'69 black over blue Ford,* and upon seeing the defendant they observed him walk into the Cosmos Lounge, at which time they placed him under surveillance for a period of *thirty* minutes," in contradiction of Officer Jones' testimony given at the trial in the circuit court. (Emphasis supplied.) The prosecuting attorney objected to the offer of proof "because it's not an official record and we cannot go on that basis." The objection was sustained by the trial court.

■ Defendant argues in this court that the trial court was in error in refusing to allow Miss Montefelice to testify for impeachment purposes as to what Detective Jones testified to at the preliminary hearing. The State here argues that the trial court properly excluded statements made by Detective Jones at defendant's preliminary hearing on the ground that such evidence was immaterial and collateral. Secondarily, the State argues that the testimony or transcript of the official court reporter would be better evidence of what was said at the preliminary hearing than the report of a private stenographer.

■ The defendant is entitled to show inconsistent statements by a prosecuting witness, but such impeachment must not concern an immaterial or collateral matter. State v. Thompson, 280 S.W.2d 838 (Mo. 1955); State v. Miles, 412 S.W.2d 473, 476 (Mo.1967).

Testimony as to the year and color of the car and the length of time that defendant was under surveillance, although merely details, are not "collateral." McCormick, Evidence § 47 (1954), p. 102, says: "A witness has told a story of a transaction crucial to the controversy. To prove him wrong in some trivial detail of time, place or circumstance is 'collateral.' But to prove untrue some fact recited by the witness that if he were really there and saw what he claims to have seen, he could not have been mistaken about, is a convincing kind of impeachment that the courts must make place for, despite the fact that it does not meet the test of admissibility apart from the contradiction. To disprove such a fact is to pull out the linch pin of the story. So we may recognize this third type of allowable contradiction, namely, the contradiction of any part of the witness's account of the background and circumstances of a material transaction, which as a matter of human experience he would not have been mistaken about if his story were true. * * *"

There can be no doubt that an experienced police detective, such as Officer Jones, would know the year and color of a car that he had had under observation for some time. Likewise such a witness would not be confused as to whether he had the defendant under surveillance for five minutes or for thirty minutes. A proper foundation was laid by defense counsel in cross-examination for the introduction of impeaching testimony as to these matters.

There is no case directly in point in Missouri, but the question of whether the official court reporter's notes are the "best evidence" barring any other testimony such as an attorney's recollection of what transpired at a hearing in another case in the

same court was passed on by the Springfield Court of Appeals in Buchanan v. Scott Milling Co., 157 S.W.2d 810, 812 (Mo.App.1941): " * * * But Mr. Sharp [plaintiff's attorney] was present and participated, and it seems to us that his testimony as to what occurred on the voir dire in the case of Herrin v. Richey *was competent and just as competent as the notes of the* [official court] *stenographer would have been,* though the testimony of Mr. Sharp possibly may not be regarded as so convincing as the actual shorthand notes taken at the time. But the weight of such testimony was for the trial court." (Emphasis supplied.)

If the testimony of a lawyer as to what was said by a witness at a trial in another case at an earlier time is admissible, as in *Buchanan,* surely the stenographic notes of a qualified stenographer, even though not the official court reporter, would certainly be admissible in a situation such as that presented in the case at bar.

McCormick, supra, pp. 498–499, cites four theories of admissibility that may be employed in proving the former testimony of a witness: (1) any first-hand observer of the giving of the former testimony may testify to its purport from his unaided memory; (2) a first-hand observer may testify to the purport of the former testimony by using a memorandum, such as the judge's, counsel's or the stenographer's notes, or the stenographer's transcript, to refresh the present memory of the witness; (3) the official written transcript, or any observer, including the stenographer himself, may be called to prove the former testimony without producing the official report of transcript; and (4) a witness who has made written notes or memoranda of the testimony at the time of the former trial, or while the facts were fresh in his recollection, and who will testify that he knows that they are correct may use such notes as memoranda of *past recollection recorded.*

In the case at bar defendant was not atto which the best evidence rule would be tempting to prove the terms of a writing, applicable (McCormick, supra, p. 409), but rather oral statements in court, heard by a number of persons and taken down in some form of shorthand by at least two persons, one of whom is the official court reporter and the other a stenographer employed by the Public Defender. As between the two stenographers one is not merely by reason of being the officially appointed reporter deemed more accurate as a matter of law in recording oral testimony than the other. It is our view that, after preliminary qualification sufficient to satisfy the trial court, the notes of either or both, if offered, should be permitted to be read in evidence and the weight of such testimony would be for the jury.

The State's argument that discrepancies in the identification of the vehicle by year and color and the length of time of surveillance is immaterial because the vehicle was positively identified with the license number and photographs begs the question where the defendant admitted he rode in the car but denied he *drove* it and the real issue is whether he actually drove the car. The issue of fact is whether defendant is the person the police officers saw driving the car or whether it was Leroy or someone else. If Officer Jones did not observe the automobile closely enough to determine its year and color did he observe the driver closely enough to determine it was defendant? The jury was entitled to consider directly related background matters in judging the credibility of the State's witnesses.

Although the trial court has a reasonable latitude of discretionary judgment in the admission of evidence of this type, we feel that the exclusion of the proffered testimony of Miss Montefelice which would attack the credibility of the State's key witnesses on background matters directly related to

the fact issue of this case was an abuse of the trial court's discretion and error.

Reversed and remanded for the reasons stated in part II.

HENLEY, P. J., DONNELLY, C. J., and MORGAN, J., concur.

FINCH, J., not a member of Division when cause was submitted.