**STATE of Missouri,
Plaintiff-Respondent,**

v.

**Donald M. JORDAN,
Defendant-Appellant.**

**No. 46107.**

Missouri Court of Appeals,
Eastern District,
Division Three.

Jan. 31, 1984.

Robert Jackson Maurer, Asst. Public Defender, Clayton, for defendant-appellant.

Kristie Lynne Green, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

KAROHL, Presiding Judge.

Defendant Donald Jordan was convicted in a jury-tried case of stealing a 1979 Chevrolet Corvette automobile § 570.030, RSMo 1978 (effective January 1, 1979). He was sentenced as a persistent offender to twelve years imprisonment. Defendant appeals.

The automobile owner's testimony made a submissible case for the state. She testified that on April 28, 1980 she was awakened about 4:00 a.m. by a pounding noise, looked out the second floor window of her apartment, and saw a tall black man trying to open her car door. She had a clear view of him for two or three minutes from a distance of twenty or thirty feet. He was dressed in a blue plaid shirt and jeans. The victim positively identified defendant as the man who broke into and drove away in her car.

The victim immediately reported the incident to the police. Shortly thereafter and within minutes after a description of the vehicle was broadcast, a police officer, Sgt. Thake, found the car out of fuel at a nearby gasoline station. Sgt. Thake testified that he saw defendant thirty to fifty feet from the vehicle walking away from the station. Defendant reportedly had on a silver jacket, beige pants, and a beige shirt. Sgt. Thake advised defendant to stop, but he stopped only momentarily. Again ordered to stop, defendant ran across the street, through

some weeds, and lay down in a depression or small ditch. There police took him into custody.

Defendant testified. He said his automobile ran out of gas some distance from the filling station and he walked there to get fuel but paused to get a soda out of the machine. When he heard Sgt. Thake yelling at him, defendant recalled a bad experience with police officers, was afraid, and ran. Defendant further testified that he had been dressed in a beige checkered shirt, beige pants, and a gray leather jacket.

The gasoline station was attended by Ronald Howard and James Vhowinkel.[1] Howard was working as a cashier in a booth in the center of the station and Vhowinkel was outside near the pumps. Howard was defendant's crucial witness at trial. He testified he first saw the stolen car when it was parked at the pumps and saw only one person get out, a white male, who walked back to the restrooms. The police arrived about five minutes later. Howard first saw defendant at the soda machines. Howard also testified that he told police he saw only one occupant of the car, a white male, and gave them a written statement reciting those facts.

Defendant contends that the trial court prejudicially erred in restricting his cross-examination of Sgt. Thake and in permitting the state to present evidence of alleged threats and the contents of a police report to attempt to impeach Howard. We reverse and remand for a new trial.

Defendant's attorney attempted recross-examination of Sgt. Thake:

Q. In response to a question Mr. Ross [the prosecutor] just asked you, you said, based on your experience only in the area of auto theft, you had the area searched for the—other individuals; isn't that what you stated?

A. Yes sir, that is right.

Q. But that is not entirely correct is it, because didn't you receive a statement

from one of the two employees there was a white male—

MR. ROSS: —I object unless we want to let in all these statements.

. . . .

MR. ROSS: I am going to have to object. This would call for—

The court took this to be a hearsay objection which was the express basis on which it was sustained. The question was an effort to secure an admission from the witness that a search of the area for other individuals was conducted because Howard had told Sgt. Thake only a white male was involved. On both cross-examination and redirect examination Sgt. Thake had indicated that a search for others was carried out only because of his past experience as a police officer. Sgt. Thake had testified that at some point the officers began searching for a white male. His police report contained Howard's description of a white male and the fact that the area was searched for a white male.

■ "Hearsay evidence is in-court testimony of an extrajudicial statement offered to prove the truth of the matters asserted therein, resting for its value upon the credibility of the out-of-court declarant." *State v. Harris,* 620 S.W.2d 349, 355 (Mo. banc 1981). The testimony defendant attempted to offer here was not hearsay. Defendant sought to ask Sgt. Thake what Howard had told him, not to show the truth of Howard's statements, but to explain the reason for subsequent police conduct and to impeach Sgt. Thake's statements as to why he had ordered the search. It is well established that a statement which leads to action by the police is admissible to supply relevant background and continuity to the action. *State v. Brooks,* 618 S.W.2d 22, 25 (Mo. banc 1981); *see also State v. Giannini,* 606 S.W.2d 780, 781 (Mo.App.1980).

■ In this case, presenting evidence as to why the police took the action they did also impeached the state's witness. Sgt.

---

1. It is not clear from the record whether Vhowinkel was actually employed by the station or just visiting Howard.

Thake specifically injected the issue into the case himself by testifying twice that he had ordered a search of the area solely because of his prior experience as a police officer, i.e., in his experience often more than one person was involved in a car theft. Sgt. Thake's police report, however, indicated the description given by Howard lead to the search. The report contained both Howard's description of a white male and the fact that the police searched the area for a white male. This was sufficient to amount to a prior inconsistent statement. *See State v. Simmons,* 559 S.W.2d 557, 560 (Mo.App.1977). A defendant may show inconsistent statements by a prosecuting witness if the statements do not concern an immaterial or collateral matter. *State v. Alexander,* 499 S.W.2d 439, 443 (Mo.1973). A trained police officer such as Sgt. Thake was not likely to be mistaken as to why he conducted a search, and thus to impeach him on this point could cast doubt on the reliability of his entire story. Such evidence is not collateral. 499 S.W.2d at 443.

■ It was error to prevent defendant from questioning Sgt. Thake on this point. Only prejudicial error, however, is reversible error. *State v. Kurtz,* 564 S.W.2d 856, 861 (Mo. banc 1978). Our Supreme Court has indicated jurors are more likely to come to just results where they do not have to speculate as to the reason for a police officer's actions. *State v. Brooks,* 618 S.W.2d at 25. Sgt. Thake's testimony was confusing in that it did not offer a rational explanation as to why he was searching for a white male, and the evidence offered by defendant would have further explained the search. More importantly, defendant was prejudiced in that he was not permitted to attempt to impeach an important state witness. Sgt. Thake testified that he saw defendant walking away from the stolen car and that defendant ran from him after he was ordered to stop. The officer's testimony was harmful to defendant, and denying defendant an opportunity to attack Sgt. Thake's general reliability was prejudicial.

■ Defendant also claims the trial court erred in admitting evidence which was intended to impeach Howard. The state theorized that Howard's testimony, favorable to the defense, was coerced by a threat and therefore untruthful.

On cross-examination, over defendant's objection, the prosecutor asked Howard the following question:

Q. Was a police report made with regard to a threat that was made from a Negro male caller to the Vickers Station saying that he was the man from the white Corvette and if he ever saw the attendants again, he [sic] would be dead?

The threatening phone call was allegedly received by a female employee at the station shortly after the night of the theft. The female employee was not a witness at trial. Defendant's objection was based upon both hearsay and lack of proper foundation. The state argued that Howard was asked about the phone call to show why he was testifying and his possible bias or prejudice, and that therefore the line of questioning did not call for hearsay. We disagree. The prosecutor's questions specifically asked for confirmation of the truth of statements made by the out-of-court female employee:

Q. She [the female employee] worked from 7 a.m. until whatever, and the call was received during her shift from a black male and the caller said, "I am the man in the white Vet and if I ever see those guys again, they are dead." Isn't that right?

On recross he again asked Howard:

Q. You were threatened by a Negro male who called you [sic][2] on the phone, weren't you, who said, "I am the man from the white Corvette"?

There was no foundation evidence presented that the defendant made a threatening call or that he caused it to be made. The state's question posited a "negro male caller" but there was no evidence that the caller was either black or male. Howard did not receive such a call, denied

2. The state did not contend that Howard had    received a threatening call.

that his testimony was motivated by any threat, and questioned how anyone could "tell a negro from a white person on the phone." He did not know if any such call was made and denied any participation in a report of the incident to the police but remembered the female employee said something about a phone call. Howard denied being scared and said he was present in court because he did not want to see a person convicted "for something he never did."

"Making statements, asking questions and offering evidence regarding threats against witnesses when the threats, directly or indirectly, cannot be associated with the defendant, may well form the basis for declaring a mistrial instanter, or for granting a new trial, or for reversal on appeal." State v. Hicks, 535 S.W.2d 308, 312 (Mo. App.1976); see also 22A C.J.S. Criminal Law § 633 at 486 (1961). Here the state not only presented no evidence that defendant was connected to a threat, it failed to present admissible evidence that there was a threat. By repeatedly referring to a "negro male" caller the prosecutor raised the possible involvement of the defendant in the calls. A failure to prove a connection between the defendant and the alleged threat permitted the defendant to be held answerable for the independent actions of another, and that is impermissible. State v. Hicks, 535 S.W.2d at 312. Allowing the state to make these inquiries was both erroneous and prejudicial.

We are asked to consider appellant's final point as plain error. Rule 30.20. He contends the trial court erroneously admitted the contents of a police report into evidence to impeach Howard. In rebuttal the state called a police officer in charge of police records to testify as to part of a police report written by another officer who was not a witness at trial. The officer who wrote the report apparently talked to Howard. The in-court witness was asked what the police report reflected with regard to the conversation. He summarized his reading of the police report in the following answer: "Basically, Mr. Howard stated he had observed the Corvette pulled onto the parking lot, not paid any attention to it or see [sic] any of its occupants or did not see anybody get out of the car. However, he did see a white male on the lot of the station."

■ Police report entries may be admitted into evidence when qualified under the Uniform Business Records as Evidence Law, §§ 490.660 to 490.690 (hereinafter Act). Nash v. Sauerberger, 629 S.W.2d 491, 492 (Mo.App.1981). The Act does not make evidence admissible which would be incompetent if offered in person. 629 S.W.2d at 492. In order to be admissible under the Act the report must be shown to be either based on the entrant's observations or on the information of others with a business duty to transmit it to the entrant. State v. Boyington, 544 S.W.2d 300, 305 (Mo.App. 1976). Unlike Duncan v. State, 520 S.W.2d 123, 125 (Mo.App.1975), cited by defendant, the evidence here reasonably showed that the police report was based on the entrant's own observations. Also, as is required under the Act, had the entrant been present in court he could have testified to what Howard told him. See State v. Boyington, 544 S.W.2d at 305. The evidence was offered as Howard's prior inconsistent statement and was not hearsay, i.e., not offered for the truth of the matter asserted therein, but to show that Howard could not have been telling the truth both at trial and in the reported conversation. See 3A Wigmore, Evidence § 1018 at 995–96 (Chadbourne rev. 1970). The state also met the other requirements under the Act. See § 490.-680, RSMo 1978. We find no plain error.

For the reasons stated above the judgment is reversed and the cause remanded for a new trial.

REINHARD and CRANDALL, JJ., concur.