**STATE of Missouri, Plaintiff–Respondent,**

v.

**Leon GARNER, Defendant–Appellant.**

**No. 16604.**

Missouri Court of Appeals, Southern District, Division Two.

Nov. 9, 1990.

Motion for Rehearing or Transfer Denied Dec. 3, 1990.

Application to Transfer Denied Jan. 9, 1991.

Robert D. Rachlin, Robert A. Miller, Jr., Downs, Rachlin & Martin, Burlington, Vt., Lew Kollias, Columbia, for defendant-appellant.

William L. Webster, Atty. Gen., John P. Pollard, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

SHRUM, Judge.

A jury found defendant Leon Garner guilty of the class A felony of murder in the first degree, § 565.020, RSMo 1986, and assessed punishment at imprisonment for life without eligibility for probation or parole. The trial court entered judgment on the verdict. An opinion dealing with the appeal of that judgment is found in *State v. Garner*, 760 S.W.2d 893 (Mo.App.1988). This court vacated the judgment—*not* the *verdict*, only the *judgment*—and remanded the case with direction that the trial court make a fact finding on the issue of whether defendant requested a lawyer prior to confessing. It held that such question of fact would have to be resolved before defendant's first point could be ruled. *Garner* at 905. Further, this court determined that the fact issues necessary for adjudication of defendant's first point would have to be resolved by a different judge, which meant that the new judge had to hear all evidence on a suppression motion that defendant and the State desired to present on these issues. *Garner* at 906.

If the new judge, upon making the factual findings necessary to resolve the issue of admissibility, rules that appellant's written and videotape confessions

are admissible, the new judge shall sentence appellant in accordance with the verdict and enter judgment accordingly. Appellant can then appeal anew, *but such appeal shall be confined to the issues raised by appellant's first point*[1] *in the instant appeal,* as we have already rejected appellant's second point and all other allegations of error in appellant's motion for new trial have been abandoned.

*State v. Garner, supra,* at 906–907 (emphasis added).

Upon remand, the Missouri Supreme Court assigned Judge Fred W. Copeland to the case by order dated November 23, 1988. The docket sheet reflects that on February 8, 1989, Judge Copeland set the suppression motion for trial on May 5, 1989. On February 14, 1989, the cause was reset for June 1 and 2, 1989. The evidentiary hearing on defendant's suppression motion was held June 1, 1989. On August 18, 1989, Judge Copeland entered a written judgment entry (five pages in length) which included detailed findings of fact and conclusions of law. Judge Copeland's order read, in part, as follows:

> The Court, based on the evidence presented at the hearing on June 1, 1989, finds that confessions, oral, written and videotaped, given by the Defendant on the evening of February 23, 1986, and the early morning hours of February 24, 1986, were voluntarily made by the Defendant and that said confessions were not made as a result of force, threats or coercion. The Court further finds that the Defendant did not request an attor-

ney at any time prior to the making of these confessions.

> Therefore, the Court, for the foregoing reasons, finds that the oral, written and videotaped confessions of the Defendant ... are found to be admissible as evidence against the Defendant Leon Garner.

On September 26, 1989, Judge Copeland entered judgment per the original verdict. This appeal followed. This court affirms.

In Point I defendant claims trial court error by Judge Copeland when he refused, on the date of the suppression hearing, to permit defendant's counsel to inquire of him about his knowledge of the case. The factual background of this point is as follows. At a pre-hearing conference on June 1, 1989, defendant's counsel said to Judge Copeland:

> MR. RACHLIN: ... I would like to make some inquiries of this Court bearing specifically on the Court's familiarity with this case, relationship with the parties in the case, with a view to establishing whether or not this Court can or ought to sit in matters that are gonna depend upon judgments of credibility of people.
>
> ... This Court's gonna be called upon to make some credibility judgments, and for that reason I'd like permission to make some inquiries of the Court along those lines.

> THE COURT: Denied, Mr. Geiger.
>
> ....

> THE COURT: This Court is not going to be examined by counsel.... I was

---

**1.** In defendant's initial appeal, his first point was: "The trial court erred in denying appellant's motion to suppress. The undisputed evidence at the suppression hearing established that appellant requested a lawyer, that his request was not honored, and that law enforcement authorities thereafter initiated interrogation. Further, the unrebutted evidence at the suppression hearing shows that appellant did not voluntarily confess to the crime, but was coerced into confessing. The trial court denied the motion to suppress without making any findings, and later, after conviction, made an off-the-record comment to the effect that the court had obtained information on its own, undisclosed to counsel, which convinced the court of appellant's guilt. The fifth, sixth, and fourteenth amendments of the United States Constitution require that all evidence of the confession be suppressed. At a minimum, appellant should be afforded a full and fair suppression hearing, free from the taint that matters outside of the record and undisclosed to counsel may have been considered." *See State v. Garner, supra,* at 903.

assigned to this case in November of, November the 30th of last year, which is seven months, if not more. You had ample opportunity to disqualify this Court.... I'm not familiar with this case at all other than the fact that I was an Associate Circuit Judge back a year or so ago whenever this case was originally tried. I have no familiarity with this case. But, this Court is not going to be examined as to whether this Court has any preconceived thoughts; I can assure you that I do not. I know no more of this case than I know of any other case that comes before me.... I have no more information concerning this case than any other case that would appear before me. And I promise you that I am certain that I can decide this case based upon the evidence that is presented to the Court here this day.

Is there anything else you would like to present to the Court before we proceed with the hearing?

....

MR. RACHLIN: ... I understand then that the Court is ruling that by not having inquired into these matters before today, that we have waived any right that we would otherwise have to inquire into the impartiality of this Court?

THE COURT: I, I'm not going to be examined before we proceed here today by counsel, is what I am telling you. I will tell you at, at this time, and I see no problem with it, I believe that when this case was tried ... I was Associate Circuit Judge of this county. I believe I walked upstairs to talk to the Bailiff of the Court, who was a deputy, for a brief period of time.

I visited Mr. Geiger. I was in the New Madrid County Library an afternoon that the trial, I believe, was being held. Mr. Geiger[2] approached me, initiated conversation about his involve-

ment—I believe he told me he was from New England and that he was down here involved in the case that was being tried; that is the only contact I have had with this case. I see nothing that would, based upon that, or the fact that I served as Associate Circuit Judge while this case was being tried in this county, that would disqualify me or render me as an impartial or a not impartial judge in this matter.

....

MR. RACHLIN: ... I take it that the Court is ruling then that I may not inquire about the particulars of the conversations that Your Honor has had, is that correct, I may not inquire about that?

....

THE COURT: ... Let's approach it this way. If you would like to make a statement as to, as to matters that you think might lead to show that the Court might be prejudiced against your client in any way, rather than examine me, if you would like to make a statement concerning why I should not hear this case, I would be happy to, to allow you to do that.

MR. RACHLIN: All right, Your Honor.

THE COURT: And I may comment on them after you make that statement.

MR. RACHLIN: ... I must respectfully contend ... that it is the right of counsel, where credibility of witnesses is in issue, ... to make reasonable, judicious and courteous inquiry ... to establish whether or not the Court ought to sit or ought to recuse itself.... I believe that we are entitled to make reasonable and respectful and courteous inquiry of the Judge in order to determine whether or not the Judge has any knowledge of the case, and has any opinions about the case, has any relationships with the Prosecutor,

---

2. Transcript of the jury trial held September 28–October 1, 1987, records Maurice D. Geiger, of North Conway, New Hampshire, as co-counsel for defendant.

with the former judge in the case, police officers, I believe we're entitled to make that inquiry. And while I appreciate the Court's statement, and I don't in any way wish to impugn the integrity of the Court and sincerity of the Court, I don't think that that automatically disqualifies us from making reasonable inquiry on our own, I think that is the responsibility of counsel.

THE COURT: Overruled.

MR. RACHLIN: ... I would like to move at this time ... the Court to recuse himself ... on the grounds that there is reasonable grounds to believe that the Court may have knowledge or opinions about the case that counsel has been denied the opportunity to make inquiry as to those matters and that we are therefore put in a position where we must either proceed with a judge who will not be examined on these issues or pursue what other remedies we may have.... So, we would move the Court to recuse himself by reason of the Court's unwillingness to be—to, to receive reasonable inquiry of counsel.

THE COURT: Overruled.

■ Rule 32.10 requires a judge who "has an interest in ... the criminal proceedings" to disqualify himself even if no such application has been made. *State v. Martin*, 671 S.W.2d 20, 22 (Mo.App.1984). Rule 32.09(c) provides that nothing in "Rules 32.01 through 32.09, inclusive, shall prohibit a judge from ordering a change of ... judge when fundamental fairness so requires." Accordingly, the fact that the request by defendant at the time of the hearing was not in writing and was not timely did not preclude defendant from making the request that Judge Copeland recuse himself.

Judge Copeland, in denying defendant the right to question him and in refusing to recuse, noted the failure of defendant to file a timely change of judge motion (apparently referred to Rule 32.07).[3] However, he did not rest his decision solely on Rule 32.07. He specifically asked defense counsel "to make a statement concerning why I [Judge Copeland] should not hear this case...." The response by defendant's counsel did not recite any specific causes which mandated disqualification under Rule 32.10 nor under Rule 2, Canon 3(C)[4], and no such causes are found in the record. Neither did defense counsel respond with any facts nor state a specific cause why "fundamental fairness so require[d]" Judge Copeland to recuse. Rather, defense counsel's response was that "it is the right of counsel, where credibility of witnesses is in issue ... to make reasonable ... inquiry ... to establish whether or not the Court ought to sit or ought to recuse itself...." No authority is cited by defendant to support the proposition that the trial court must submit itself to interrogation each time it is called upon to make decisions where the credibility of witnesses is in issue, and indeed, no such authority exists.

■ In nearly every case, a trial court is called upon to make decisions concerning the credibility of witnesses. That is one of the basic functions of the trier of fact in our legal system. To subject a trial court to such an examination each time it is called upon to hear disputed testimony would create chaos in the judicial system. A judge is entitled to the presumption that he will not undertake to preside in a trial or

---

**3.** Rule 32.07 provides for a peremptory challenge of a judge without cause if timely filed. Here, there was no Rule 32.07 motion filed and, therefore, it is not necessary to decide when, if ever, defendant would have been entitled to a Rule 32.07 disqualification of Judge Copeland.

**4.** Rule 2, Canon 3, reads:
    **C. Disqualification.**

    (1) A judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, including but not limited to instances where:
    (a) he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding...."

hearing in which he cannot be impartial. *State v. Hoeber,* 737 S.W.2d 484, 486 (Mo. App.1987); *State v. Presley,* 694 S.W.2d 867, 869 (Mo.App.1985). When defendant's counsel was given an opportunity by Judge Copeland to state reasons why his freedom from bias was being called into question, no reasons were given. As said in the earlier opinion by this court, "the inquiry is whether an onlooker might *on the basis of objective facts* reasonably question whether" the trial judge is actually biased. *State v. Garner,* 760 S.W.2d 906 (emphasis added). The cornerstone of that principle is that the inquiry into possible bias of the judge must be *reasonably questioned on the basis of objective facts.* The record in this case does not reveal that the inquiry into the possible bias of Judge Copeland was based upon any objective facts. What defendant wanted to do was interrogate the trial judge, probe his mind about possible bias when the record was devoid of any reasonable basis for such inquiry. There are no objective facts in the record which cast any doubt upon the presumption that Judge Copeland was free of bias and prejudice. *State v. Presley, supra,* at 869. The defendant here received the absolute im-

partiality by the trial judge to which he is entitled. *State v. Davis,* 653 S.W.2d 167, 177 (Mo.banc 1983). This court does not find in the record any demonstrable bias by Judge Copeland against defendant, his witnesses or his lawyer,[5] or any favoritism by him toward the State, the prosecuting attorney, or the State's witness. The record demonstrates Judge Copeland afforded defendant a fair hearing as measured by the highest standard of judicial skill and impartiality. *State v. Presley, supra,* at 869. No request was made by defendant prior to the suppression hearing that Judge Copeland recuse. No reasons are found in the record at the time of the suppression hearing why Judge Copeland should have recused. Point I on this appeal is denied.

In Point II, defendant claims Judge Copeland erred when he failed to require disclosure to defendant of the personnel file of city policeman James Mills.[6] Defendant's request for the personnel file was first made during the hearing, during cross-examination of Officer Mills,[7] as follows:

Q. [By Rachlin]: Is there anything in your police file that would reflect such complaints [intimidating anyone]?

---

**5.** During oral argument, defendant's counsel Rachlin admitted that no claim was being made that Judge Copeland should have recused himself because of any conversation that occurred between Maurice Geiger (defendant's co-counsel) and Judge Copeland.

**6.** In its entirety, Point II reads: "The trial court erred in failing to require disclosure of the personnel file of Officer Mills, the State's key witness as to the voluntariness of appellant's confession and thus the admissibility of appellant's confession, because such action deprived appellant of due process rights to a full and fair suppression hearing in that Mills' credibility was the crucial factor in the suppression hearing and Mills' personnel file may have contained important information with which to impeach his testimony, including past acts of intimidation and violence against other persons, which information was directly relevant to appellant's claims of an involuntary confession in the case at bar. In the alternative to refusing disclosure of Mills' personnel file to appellant, the trial court should have conducted an in camera inspection of the file and then ordered disclosure of any relevant information to appellant."

**7.** In his brief, defendant argues (without citation to legal file or transcript) that his counsel first obtained information regarding Officer Mills' alleged misconduct as a police officer subsequent to the reversal of judgment by this court and remand for further proceedings. Nothing in the record supports that assertion. Defendant also asserts in his brief that his counsel had requested access to Mills' personnel file before the June 1, 1989, suppression hearing and that the State refused to produce the file but brought the file to the suppression hearing. The State did have the subject file at the hearing but any request for access to it before the hearing was, for all the record reveals, an informal request directed to the prosecuting attorney because the file before this court is devoid of any indication that defendant's personnel file was (a) subpoenaed, or (b) sought pursuant to the mandatory discovery Rule 25.03, or (c) sought pursuant to the discretionary discovery Rule 25.04.

A. [Witness Mills]: Not that I know of. I never seen my file.

[Mr. Rachlin]: ... I have requested Mr. Hazel to produce Mr. Mills' file, personnel file; I think I'm entitled to see it on issues relating to his credibility. Mr. Hazel has indicated he has it with him but he will not make it available to me voluntarily....

The prosecutor responded that he did have the file; he was not going to produce it voluntarily without the court ordering him to do so. He objected that (a) time for discovery in the case had passed; (b) that although he had the file with him, the file belonged to the City of Caruthersville, and the City had not authorized him to reveal it to anyone. The court denied defendant's request that he be given access to Mills' personnel file. Defendant's counsel made additional arguments [8] as to why he believed he should be entitled to the personnel file. The trial court again denied the request, with the comment that evidence of convictions would certainly be admissible. Thereupon, defendant's counsel continued the cross-examination of Mills.[9]

**8.** "MR. RACHLIN: ... [T]he Court has heard this witness [Mills] testify that Mr. Garner did not ask for counsel. Mr. Garner will testify ... that he asked for counsel and that Mr. Mills was the police officer whom he asked for counsel, therefore, this officer's credibility is crucial to the determination of the issue before the Court, and with that in mind, and in view of the fact that we have stated, as officers of the court, that we have a good faith basis for wishing to inquire into his personnel record, we would ask that the Court order production of that file."

Defendant's counsel subsequently stated to the court:

"[W]e have information that this man was involved at one time in an accusation of theft while he was a police officer; that may be entirely untrue but I have that information; now that, as I understand the Missouri Law, would bear upon his credibility as a witness, and because his credibility is a key to the disposition of this case, I contend that on that basis we are entitled to inquire into that personnel record.

I would make the further statement on the record that we have information indicating that his departure from the Caruthersville Police Department was departure under a cloud ... of personal misconduct.

No general right to discovery exists for criminal cases in Missouri, and absent some statutory provision or rule of court, discovery is not permitted. *State v. Sinner,* 772 S.W.2d 719, 721 (Mo.App.1989); *State v. Clark,* 711 S.W.2d 885 (Mo.App. 1986). However, defendant asserts he should have been granted access to Officer Mills' personnel file because impeachment evidence as well as exculpatory evidence has been held to fall within the scope of the rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).[10] *United States v. Bagley,* 473 U.S. 667, 676–77, 105 S.Ct. 3375, 3380–81, 87 L.Ed.2d 481, 490–91 (1985). *Bagley* did not apply an "automatic reversal" rule, but held that failure to disclose information that might have been helpful in conducting cross-examination amounts to a constitutional violation only if it deprives the defendant of a fair trial. *Bagley,* 473 U.S. at 678, 105 S.Ct. at 3381, 87 L.Ed.2d at 491. "[T]he Due Process Clause has little to say regarding the amount of discovery which the parties must be afforded...." *Wardius v. Oregon,* 412 U.S. 470, 474, 93 S.Ct. 2208, 2212, 37 L.Ed.2d 82, 87 (1973). Indeed, the Su-

Again having in mind the extent to which prior wrongful acts, prior criminal acts, may be used to impeach the credibility of a witness, we believe that we should be entitled to look at that record at this time based on that offer...."

The record does not reveal any additional reasons advanced by defendant as to why he claimed to be entitled to Mills' personnel file.

**9.** Counsel never asked Mills if he had any convictions.

**10.** "[I]n *Brady v. Maryland* ..., the Supreme Court held that in a state trial, the state's suppression of evidence favorable to and requested by an accused violates the due process clause of the Fourteenth Amendment where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution. Specifically, the Supreme Court ruled that where an accused was charged with murder committed in the course of robbery, the suppression of an accomplice's extrajudicial statement admitting that the accomplice committed the actual homicide violated due process." *Bagley,* 87 L.Ed.2d at 806.

preme Court in *Weatherford v. Bursey*, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30, 42 (1977), clarified the fact that "[t]here is no general constitutional right to discovery in a criminal case, and Brady did not create one." [11] The *Brady* decision referred to suppression of "evidence favorable to and requested by an accused [which is] material either to guilt or punishment," but it does not define materiality. In *Bagley* (involving material sought for impeachment purposes) the court held that "[t]he evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383, 87 L.Ed.2d at 494. Measured by that standard, this court finds *Bagley* is not implicated here where the only claim is that the State should have revealed the personnel file of Mills for impeachment purposes.

◼◼◼ Mills was hardly a surprise witness. Mills testified at defendant's trial on September 30, 1987, as a rebuttal witness. Mills denied at that time defendant's claim that defendant had asked for an attorney before he gave his statements. Defendant had 20 months to prepare for impeachment of Mills. Most of defendant's efforts at impeaching Mills were on collateral matters; i.e., facts which were of no material significance in the case or were not pertinent to the issues developed. *State v. Miles*, 412 S.W.2d 473, 476 (Mo.1967). Issues concerning alleged thefts by Mills, leaving the department under a "cloud of personal misconduct," and similar issues which were not alleged to involve defendant, were collateral issues and involved collateral facts. Defendant was entitled to impeach the testimony of Mills, provided such impeachment did not concern immaterial or collateral matters. *State v. Alexander*, 499 S.W.2d 439 (Mo.1973); *State v. Taylor*, 486 S.W.2d 239, 244 (Mo.1972); *State v. Ball*, 529 S.W.2d 901, 907 (Mo.App. 1975). If the impeachment relates to collateral matters, the party is bound by the answers given upon cross-examination. *State v. Johnson*, 486 S.W.2d 491, 496 (Mo. 1972); *State v. Miles, supra*, at 476; *State v. Ball, supra*. The trial court is afforded a reasonable latitude in admitting or excluding evidence of this type. *State v. Alexander, supra*, at 444; *State v. Ball, supra*, at 907.

Indeed, the court in this case afforded defendant wide latitude in cross-examining Mills on the collateral matters. For example:

Q. [By Mr. Rachlin]: Were you ever accused of any wrongdoing when you were a police officer?

A. [By Mills]: Yes, sir.[12]

.    .    .    .    .

Q. Were you ever accused of intimidating anybody?

A. I've been accused of that all my life for my size.[13]

Defendant was bound by the answers given upon cross-examination as to the collateral matters. As to the material questions; i.e., accusations of intimidation and wrongdoing, Mills gave affirmative answers. Under the totality of the facts found in this case and given the freedom afforded defendant to cross-examine Mills about collateral

**11.** In *Weatherford v. Bursey*, 429 U.S. at 559, 97 S.Ct. at 846, 51 L.Ed.2d at 42, the Supreme Court held: "Brady is not implicated here where the only claim is that the State should have revealed that it would present the eyewitness testimony of a particular agent against the defendant at trial."

**12.** When asked to explain, Mills' replied, "Of pickin' on people on speedin' tickets, stuff like that."

**13.** Following Mills' admission that he had been accused of "intimidating" people, counsel asked if there was anything in Mills' police file that would reflect such complaints. Mills replied that he did not know. Thereupon, for the first time, the court was presented with a request for Mills' personnel file.

matters, this court finds that there is no reasonable probability that, had Mills' personnel file been disclosed to defendant, the result of the suppression hearing would have been different.[14]

Defendant relies upon *Pennsylvania v. Ritchie*, 480 U.S. 39, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987), to assert that, at a minimum, defendant was entitled to have Mills' personnel file reviewed by Judge Copeland to determine if it contained information that probably would have changed the outcome of the case. In *Ritchie*, the defendant was charged with various sexual offenses against his daughter. The opinion recited that "[a]t trial, the main witness against Ritchie was his daughter." *Pennsylvania v. Ritchie*, 480 U.S. at 44, 107 S.Ct. at 994, 94 L.Ed.2d at 49.[15] Defendant sought, by pre-trial discovery, access to the records of the State agency that had responsibility for investigating accusations of child abuse. The court held that defendant was entitled to have the agency's file reviewed by the trial court to determine whether it contained information that probably would have changed the outcome of his trial.

The facts here are clearly distinguishable from *Ritchie*. First, as heretofore noted, the file was sought by defendant for impeachment purposes on collateral matters. There was no claim made by defendant that Mills' personnel file contained any information that would tend to impeach defendant on issues directly related to defendant's case. Second, contrary to *Ritchie*,

where the records sought were for purposes of impeaching the "main witness," here, there were four other persons who testified at the suppression hearing. Three of those persons testified that defendant never requested an attorney after he was given Miranda warnings but before he made the statements. These three included: (1) Harold Mansfield, a Caruthersville police officer, who was present when Mills arrested defendant, was present when Mills gave defendant his Miranda warnings, and said that defendant did not ask for a lawyer at that time; (2) police officer Gary Hilburn who transported defendant to Poplar Bluff and who was present when the Miranda warnings were read to defendant at Poplar Bluff, Missouri; (3) Sergeant Donnie Smith, highway patrol officer, who administered the polygraph test to defendant at Poplar Bluff, Missouri, after advising defendant of his Miranda rights. The fourth person was Officer Raymond Best who assisted in transporting defendant to Poplar Bluff, Missouri, and was present when Miranda warnings were given to defendant before defendant made the statements. Judge Copeland, in his findings of fact and conclusions of law, noted that "[f]our other officers that had contact with the Defendant from the evening of February 22, 1986, to the early morning of February 24, 1986, all testified that the Defendant never requested an attorney." It is clear that Judge Copeland's finding that "Defendant did not request an attorney prior to his written and videotaped statements on February 24, 1986," was not

---

**14.** Support for this finding is drawn from cases in which the prosecutor's failure to disclose the following types of evidence has been held not to violate due process where the evidence was found not to be sufficiently material under the circumstances: (1) a preserved breath sample of a person accused of driving while intoxicated, *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984); (2) the identify of an undercover agent who attended pretrial meetings between the accused and his attorney and later testified for the prosecution, *Weatherford v. Bursey, supra;* (3) a murder victim's criminal record, which would have allegedly supported the accused's claims of self-defense,

*United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976); (4) evidence of a misidentification of the accused by a state witness, *Moore v. Illinois*, 408 U.S. 786, 92 S.Ct. 2562, 33 L.Ed.2d 706, *reh'g denied*, 409 U.S. 897, 93 S.Ct. 87, 34 L.Ed.2d 155 (1972).

**15.** The opinion also reported: "In an attempt to rebut her testimony, defense counsel cross-examined the girl at length, questioning her on all aspects of the alleged attacks, and her reasons for not reporting the incidents sooner. Except for routine evidentiary rulings, the trial judge placed no limitation on the scope of cross-examination." *Ritchie*, 480 U.S. at 44–45, 107 S.Ct. at 995, 94 L.Ed.2d at 49.

grounded solely on the testimony of Officer Mills. This court is convinced that in camera review (or indeed disclosure) of Mills file would not have changed the outcome of the suppression hearing. Point II is denied.

In this appeal, defendant raised only the two points above-mentioned. Defendant has not specifically realleged Point I of his original appeal (see footnote 2). Neither has he raised, in this appeal, the issues raised by Point I in the original appeal. Ordinarily, allegations of error not briefed on appeal or not properly briefed on appeal shall not be considered by appellate courts (except errors respecting sufficiency of the information or indictment, verdict, judgment or sentence). Rule 30.20. However, because this court declined to review Point I originally briefed because of the necessity that the trial court decide if defendant requested a lawyer before giving his statements, review of that Point (see footnote 2) will now be made.[16]

■ "While the burden of proving a confession's voluntariness is upon the state, it need be proved only by a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626–27, 30 L.Ed.2d 618 (1972); *State v. Olds*, 569 S.W.2d 745, 751 (Mo.banc 1978)." *State v. Lytle*, 715 S.W.2d 910, 915 (Mo.banc 1986). On appeal, this court is faced with the question of whether the evidence was sufficient to sustain the trial court's finding that defendant's statements were voluntarily given. *State v. Lytle, supra*, at 915; *State v. Hughes*, 596 S.W.2d 723, 727 (Mo.banc 1980). Conflicts in the evidence were for Judge Copeland to resolve in the new suppression hearing, and this court defers to his superior position from which to determine credibility. *State v. Lytle, supra*, at

915; *State v. Buckles*, 636 S.W.2 914, 924 (Mo.banc 1982). Upon remand, Judge Copeland conducted an evidentiary hearing on defendant's motion to suppress. A written and detailed judgment entry[17] was issued in which Judge Copeland's conclusion that defendant's confession was voluntary appeared from the record with unmistakable clarity. *Sims v. State of Georgia*, 385 U.S. 538, 544, 87 S.Ct. 639, 643, 17 L.Ed.2d 593, 598 (1967). Where there is conflicting evidence on the voluntariness of a statement, as there is here, the admissibility of a confession by a trial court is a matter of discretion which is not lightly disturbed. *State v. Royal*, 610 S.W.2d 946, 949 (Mo. banc 1981); *State v. Flowers*, 592 S.W.2d 167, 170 (Mo.banc 1979).

On the question of whether or not defendant asked for a lawyer before making the statements, Judge Copeland's opinion pointed out that there were four law enforcement officers, in addition to Mills, who testified defendant never asked for a lawyer before making the statements. Defendant testified he did ask Mills for a lawyer. Resolution of that conflicting testimony was for the trial court, *State v. Lytle, supra*, at 915, and will not be disturbed here. *State v. Royal, supra*, at 949.

Concerning defendant's claims that he was kept in a cold cell, was denied food, and was unable to sleep, Judge Copeland noted that by defendant's own admission, he had slept 5 or 6 hours; by his testimony, defendant said he was "not sleepy or hungry" while at Poplar Bluff on the evening the statements were made. Those findings are supported by the record and support Judge Copeland's conclusion that defendant's claims that his statements were not voluntary because he was hungry and cold were without merit.

---

16. Defendant should have restated reasons why he claimed Judge Copeland's overruling of the motion to suppress was erroneous because many of the reasons advanced as error in Point I of the initial appeal, no longer exist; i.e., failure to make findings and off the record comments after trial by the trial judge. However, in reviewing Point I of the original appeal, this court has reviewed the briefs, transcripts, legal file and other materials there presented.

17. The judgement entry was five pages in length, contained findings of fact and conclusions of law, and addressed each point raised in defendant's motion to suppress.

Finally, the record supports Judge Copeland's determination that defendant's statements were not coerced by alleged threats of bodily harm by the law enforcement officers directed to defendant. Considering the entire record, this court finds there is sufficient evidence to sustain Judge Copeland's finding that the defendant's statements were voluntarily made, and it cannot be said it was unreasonable for Judge Copeland to conclude from the totality of the circumstances that defendant's confession was voluntary. *State v. Lytle* at 915. This court holds that the trial court did not err in admitting the challenged confession. The judgment is affirmed.

FLANIGAN, C.J., and PARRISH, P.J., concur.